JONES *v.* STATE.

Opinion delivered July 1, 1912.

1.  STATUTES—CONSTRUCTION—EJUSDEM GENERIS.—The rule that when general words follow an enumeration of particular things, such words must be held to include only such things or objects as are of the same kind as those specially enumerated has no application where there are no specific terms in the statute followed by general terms or where the terms employed are unlike and antagonistic in meaning.   (Page 263.)

2.  SHERIFFS AND CONSTABLES—INDICTMENT FOR CRIMINAL CONUDCT—SUSPENSION.—Under Kirby's Digest, § 7992, providing that "whenever any presentment or indictment shall be filed in any circuit court of this State against any county or township officer for incompetency, corruption, gross immorality, criminal conduct amounting to a felony, malfeasance, misfeasance or nonfeasance in office, such circuit court shall immediately order that such officer be suspended from his office until such presentment or indictment shall be tried," etc., *held* that a constable may be suspended for "any criminal conduct amounting to a felony," whether amounting to official misconduct or not.   (Page 264.)

3.  STATUTES—CONSTRUCTION—PUNCTUATION AND GRAMMAR.—The rules of punctuation or grammar can not overturn the obvious legislative intent as gathered from the language of the statute as a whole, and when construed with the Constitution and the statutes *in pari materia.*   (Page 266.)

4.  OFFICERS—SUSPENSION—GROUNDS.—The term "in office" in Kirby's Digest, § 7902, authorizing the circuit court to suspend from office any county or township officer for "incompetency, corruption, gross immorality, criminal conduct amounting to felony, malfeasance, misfeasance or nonfeasance in office." limits only the words "malfeasance, misfeasance and nonfeasance."   (Page 266.)

Appeal from Pulaski Circuit Court, First Division; *Robert J. Lea*, Judge; affirmed.

### STATEMENT BY THE COURT.

Appellant, who was constable of Big Rock Township, in Pulaski County, Arkansas, was indicted by the grand jury of that county on May 23, 1912, for murder in the first degree. On May 25 the prosecuting attorney filed a petition asking the circuit court in which the indictment was pending to suspend the defendant from office. There was a demurrer to the petition, which was overruled, judgment of suspension was entered, and appellant appealed.

*Gus Fulk* and *Vaughan & Akers*, for appellant.

1. The doctrine of *ejusdem generis* requires that the words "criminal conduct amounting to a felony" be held to mean criminal conduct of the same kind or class as other offenses mentioned in the statute, *i. e.*, criminal conduct *in office* amounting to a felony. Kirby's Dig., § 7992; art. 7, § 27, Const.; art. 5, § 8, *Id.*; art. 2, § 17, *Id.*; Kirby's Dig., § § 617, 622, 685, 689, 690, 1613, 1874, 1954, 2449, 2450, 3553; 70 Ark. 326-331; 118 N. W. 276; 96 Ark. 89; 178 U. S. 510; 5 Wall. 107; 38 Ark. 519; 40 Ark. 97; 68 Ark. 34, 38; 70 Ark. 329; 131 Am. St. Rep. 399; 73 Ark. 600, 602; 61 Ark. 502, 503 and cases cited; 87 Pa. St. 365; 21 Wis. 496; 67 Ark. 156; 74 Ark. 534; 39 Ark. 211; 95 Ark. 114. See also 36 Cyc. 1119 *et seq.*; 81 Pa. St. 312; 42 Fed. 23, 24; 91 N. C. 545; 107 S. W. 1133; 136 Ill. 22, 25; 85 S. W. 328, 329; 131 Am. St. Rep. 339, 343; 2 Am. St. Rep. 373; *Id.* 382; 71 N. Y. 481; 84 N. Y. 565; 105 Am. St. Rep. 762; 9 Am. & Eng. Ann. Cases, 350, 358.

2. Grammatical analysis shows that the phrase "in office" qualifies or modifies every member of the series, "incompetency, corruption, gross immorality, criminal conduct amounting to a felony, malfeasance, misfeasance or nonfeasance." 1 N. Mex. 583; 65 Pa. St. 311; 100 Pa. St. 63; 70 *Id.* 311, 314; 2 Daly (N. Y.) 66; 15 Abb. Pr. (N. Y.) 290; 76 Ark. 303, 308, 322; 55 Ark. 502.

*Hal L. Norwood*, Attorney General, and *William H. Rector*, Assistant, for appellee.

1. It is patent that the doctrine of *ejusdem generis* is not applicable here.

"When general words in a statute follow an enumeration of particular things, such words must be held to include only such things or objects as of the same kind as those specifically enumerated." 95 Ark. 114, syllabus. The terms used in the statute involved in this case are *all general*, none specific.

2. Appellant's construction of the clause "in office" is not possible because it would result in an absurdity. See art. 7, § 27, Const., and Kirby's Dig., § 7992.

WOOD, J., (after stating the facts). Section 7992 of Kirby's Digest is as follows:

"Whenever any presentment or indictment shall be filed in any circuit court of this State against any county or township officer, for incompetency, corruption, gross immorality, criminal conduct amounting to a felony, malfeasance, misfeasance or nonfeasance in office, such circuit court shall immediately order that such officer be suspended from his office until such presentment or indictment shall be tried. Provided, such suspension shall not extend beyond the next term after the same shall be filed in such circuit court, unless the cause is continued on the application of the defendant."

Appellant contends that under the rule of *ejusdem generis* the words "criminal conduct amounting to a felony" must be held to mean *criminal conduct in office* amounting to a felony. Appellant also contends that the grammatical construction also leads to the conclusion that the phrase "in office" modifies the words "criminal conduct amounting to a felony," and that therefore appellant can not be suspended under the above section unless he has been indicted for official misconduct amounting to a felony.

This court has often recognized and applied the ancient maxim *ejusdem generis* in the construction of statutes. *State v. Gallagher*, 101 Ark. 593; *Lee v. Huff*, 61 Ark. 494, 502; *Eastern Ark. Hedge Fence Co. v. Tanner*, 67 Ark. 156, 9; *Matthews v. Kimball*, 70 Ark. 451, 8; *St. Louis, I. M. & S. Ry. Co. v. Love*, 74 Ark. 528, 534; *State v. Chicago R. I. & P. Ry. Co.*, 95 Ark. 114.

In the opinion in the last case above cited Judge HART, quoting from Sutherland on Statutory Construction, tersely

states the rule as follows: "When general words follow an enumeration of particular things, such words must be held to include only such things or objects as are of the same kind as those specifically enumerated."

In *Hempstead County* v. *Harkness*, 73 Ark. 602, the court said: "It is an old and settled rule of statutory construction which confines the meaning of additional and general descriptive words to the class to which the preceding specific words belong."

But the rule has no application to the statute under consideration, for the reason that there are no specific terms in the statute followed by general terms. The phrase "criminal conduct amounting to a felony," under which appellant was suspended, is a general term, and this term is not preceded or followed by any more specific terms. The terms "incompetency," "corruption," and "gross immorality" preceding, as well as the terms "malfeasance," "misfeasance" and "nonfeasance" succeeding, the words "criminal conduct amounting to a felony" are general terms.

The rule could have no application for the further reason that the terms employed are so entirely unlike and antagonistic in meaning and kind that they can not be brought by any sort of construction within the application of the rule of *ejusdem generis*. The literal meaning of *ejusdem generis* is "of the same kind, class or nature." The words "gross immorality," immediately preceding the phrase under consideration, refers to individual or personal attributes and habits, as contradistinguished from official misconduct or derelictions. There may be gross immorality in, or upon the part of, an individual during the time he may be holding office, but there can not be such thing as "gross immorality in office."

The general terms "incompetency," "malfeasance," "misfeasance" and "nonfeasance" have reference to official conduct. The term "corruption" might have reference to acts constituting official corruption, or it might be applied to individual delinquencies not in connection with his office, constituting corruption or dishonesty, as the term is evidently intended to mean.

The phrase "criminal conduct amounting to a felony" may also be applied to official acts or to individual and personal

acts, not connected with the office. But the term "gross immorality" could only be applied, as we have stated, to personal and individual qualities or characteristics, and not to official acts. Therefore, we are of the opinion that the well known canon of construction growing out of the application of the maxim *ejusdem generis* has no application to this statute.

There are no statutes making "incompetency," "corruption," and "gross immorality," as such, indictable offenses. Therefore, the Legislature must have intended by the use of these terms that when any one holding a public office was indicted for any "criminal conduct amounting to a felony," or for any offense which showed him to be corrupt or dishonest, or for any felony or misdemeanor which showed him to be "grossly immoral," and which, if proved, in the eyes of the law would render him incompetent to hold office, he should be suspended. In other words, the Legislature did not intend that an officer should perform the functions of his office while he was under presentment or indictment for any criminal conduct which, if proved, amounted to a felony, or that showed that the accused was grossly immoral or corrupt. This is the wise public policy which the Legislature manifestly intended to conserve.

That this is the proper construction is shown by the provision contained in section 7993, following the one under consideration, which provides for removal of the officer from office upon conviction of any of the offenses enumerated in the section under consideration; and also by the provision of the Constitution, art. 7, § 29, which is as follows: "The circuit court shall have jurisdiction upon information, presentment or indictment to remove any county or township officer from office for incompetency, corruption, gross immorality, criminal conduct, malfeasance, misfeasance or nonfeasance in office."

If an officer could not be suspended upon presentment or indictment under the section under consideration, then he could not be removed after conviction under the section following or under the constitutional provision *supra*. This would defeat the obvious purpose of the framers of the Constitution and statutes. If an officer could not be suspended upon presentment or indictment under section 7992, then

he could not be removed from office under the following section and the constitutional provision above set forth, although he might be convicted of murder, or rape, or any of the heinous crimes inhibited by law.

2. No rules of punctuation or grammatical construction could contravene the interpretation which we have given the statute. But, even if they did, these would not be permitted to overturn the plain and obvious intent of the Legislature, as gathered from the language of the act taken as a whole, and when construed with the Constitution and statutes in *pari materia.* "The law does not allow of a captious and strained intendment, for such nice pretense of certainty confounds true and legal certainty." Broom's Legal Maxims, 187.

The prepositional phrase "in office," according to the technical rules of punctuation and grammar, would only limit or qualify the nouns "misfeasance" and "nonfeasance" in the same part of the sentence with it as separated from the other parts of the sentence by commas, that is, the words "misfeasance" and "nonfeasance," immediately preceding it. As we have seen, it could not possibly modify the term "gross immorality."

Appellant invokes the rule that when a series of substantives connected by the disjunctive conjunction is followed by a qualifying phrase, such phrase will be held to apply to, modify or qualify each and every member of the series. But, as we have shown, the prepositional phrase "in office" could not possibly qualify the noun "gross immorality" in the series, and therefore the rule does not apply. The term "in office" therefore must be held to qualify only the terms in the series to which it naturally belongs in order to make good sense out of the language used. When thus considered, we are of the opinion that the phrase "in office" was intended only to modify and limit the three nouns immediately preceding it, that is "malfeasance," "misfeasance," and "nonfeasance," and that the sentence should be so punctuated as to give it that meaning. There are no set rules for punctuation. As judgment and taste are the guides to correct punctuation, the punctuation points which are required on principle may be omitted when they are disagreeable to the eye or confusing to the mind, or they may be so arranged as to indicate the correct

construction of the sentence as intended by its authors.  Here
the legislative intent is plain.  See Adams' Pearson; Hill on the
Foundations of Rhetoric, appendix; *Starrett* v. *McKim*, 90
Ark. 520.

The judgment of suspension is final.  It is correct, and it
is affirmed.