UTICA STATE SAVINGS BANK *v.* VILLAGE OF OAK PARK.

1. MUNICIPAL CORPORATIONS—CHARTERS—LAND CONTRACTS.

Land contract for purchase of town hall site by village, providing for payments thereon to be made over a period of years *held*, void where not submitted to electors on referendum in accordance with charter provision requiring approval of three-fifths of electors voting thereon to validate franchises, grants or contracts for a longer term than one year (Village of Oak Park Charter, chap. 16, § 2).

2. STATUTES—EJUSDEM GENERIS—APPLICATION.

Rule of construction known as *ejusdem generis* is to be used as an aid in ascertaining primary intent, not in hindering or defeating plain purpose or intent, of enacting body regardless of whether it be a statutory or charter provision.

3. SAME—SPECIFIC AND GENERAL TERMS—MEANING.

Rule of *ejusdem generis* is inapplicable when the specific words which precede the general term embrace all objects of their class in order that the general term may be given a meaning differing from the specific words.

4. MUNICIPAL CORPORATIONS—CHARTERS.

It is to be presumed that charter provisions are drafted with care.

5. SAME — CHARTERS — CONTRACTS—EJUSDEM GENERIS—APPROPRIATIONS.

Under village charter providing that "no grant or franchise * * * shall be granted or become operative nor contract for a longer term than one year made" until approved by three-fifths of electors voting thereon, land contract for purchase of site for town hall in which payments were extended over several years that was not so approved *held*, void, rule of *ejusdem generis* being inapplicable to frustrate obvious purpose of charter to restrict power of village officers from burdening future administrations or to render nugatory other charter provisions requiring that appropriations be made on an annual basis and voiding contracts entered into without appropriation having been previously made (Village of Oak Park Charter, chap. 12, §§ 6, 14, chap. 16, § 2).

6. SAME—CONTRACTS—APPROPRIATION.

Contract by village for purchase of site for town hall not approved by three-fifths of electors as required by village charter and involving expenditure of public money over period longer than that for which officers could make an appropriation *held*, *ultra vires* under charter provision invalidating contracts entered into without an appropriation therefor having been made (Village of Oak Park Charter, chap. 12, § 14).

7. LEGISLATURE—RATIFICATION.

While the legislature cannot make valid, retrospectively, what it could not originally have authorized, if an act could have been lawfully done under precedent legislative authority, it may subsequently be ratified.

8. MUNICIPAL CORPORATIONS—CONTRACTS—CHARTERS — LEGISLATURE —ELECTORS.

Under provisions of Constitution requiring legislature to provide by general law for incorporation of cities and villages and restrict their powers of borrowing money and contracting debts and giving electors of such municipalities power to frame, adopt and amend their charters, and statutory and charter provisions adopted in conformity thereto, the power to amend a village charter as to purely local matters is *held*, vested in the village electors, hence legislature is without power by curative legislation to alter village charter and validate a contract, invalid when made, without approval of electors of the village (Const. 1908, art. 8, §§ 20, 21; 1 Comp. Laws 1929, §§ 1763, 1779; Village of Oak Park Charter, chap. 17, § 5).

9. SAME—CONTRACTS—VOID AB INITIO—RATIFICATION.

Contract by municipal officers who were without power to make it in the first instance is void *ab initio* and may not be ratified by subsequent acts.

10. OFFICERS—POWERS—NOTICE.

Persons dealing with public officials must take notice of their powers.

11. MUNICIPAL CORPORATIONS—OFFICERS—CONTRACTS.

Persons dealing with a municipal corporation through its officers must at their peril take notice of the authority of the particular officer to bind the corporation and if his act is beyond the limits of his authority, the municipality is not bound.

12. LEGISLATURE—HOME RULE ACTS—AMENDMENT.

The legislature may, within constitutional limitations, amend home rule acts and render such amendments applicable to existing charters, at least as to matters of general concern and not of a purely local character.

13. VENDOR AND PURCHASER — MUNICIPAL CORPORATIONS — TOWN HALL SITE—INVALID CONTRACTS—RETURN OF PAYMENTS.

Village which had made payments on invalid contract for purchase of site for town hall *held*, entitled, in vendors' foreclosure suit, to return of payments made thereunder with interest from date of cross-bill praying return of same.

Appeal from Oakland; Holland (H. Russel), J. Submitted October 14, 1936. (Docket No. 98, Calendar No. 39,136.) Decided May 21, 1937.

Bill by Utica State Savings Bank, a Michigan corporation, and Arthur A. Meyer and wife against Village of Oak Park, a municipal corporation, to foreclose a land contract, for a deficiency decree and other relief. Decree for plaintiffs. Defendant appeals. Reversed.

*Charles A. Retzlaff* and *Henry Gage,* for plaintiffs.

*George F. Maxwell,* for defendant.

*Claude H. Stevens* and *Berry & Stevens, amici curiæ.*

NORTH, J.   The plaintiff bank, as assignee of vendors under land contract, sought foreclosure in chancery against the defendant village, the vendee. The assignment was for security only and so the original vendors are also parties plaintiff. The contract in question is dated February 26, 1929, and covers land purchased by the village, through its commission, which land was intended to be used as a site for a

town hall.  The purchase was authorized by a resolution dated February 26, 1929, and adopted by four of the five village commissioners, one being absent.  The resolution recited an appropriation of $4,000 for the purpose, that being the initial payment; the conditions of the payment of the remaining balance of the purchase price, *viz.,* $11,000, were stated by reference in the resolution to the terms of the proposed land contract.

Payments of principal and interest amounting to $2,845 were regularly made until the semi-annual payment of February, 1931.  Later the village informed the vendor that because tax collections were slow, payments could not be promptly met, but an interest payment was made on July 20, 1931.  The bank's assignors did not press the village for payments nor did the bank which had acquired the vendors' interest in the contract on July 14, 1931.  The record is silent as to further attempts to collect from the village until the filing of the bill of complaint on July 7, 1934.  By answer and cross-bill praying cancellation and accounting, the village claimed the land contract was *ultra vires* and asserted that if the contract was void *ab initio,* it could not be validated by the terms of Act No. 99, Pub. Acts 1933.  This act in part provides:

"Any contract or agreement *heretofore* entered into by the legislative body of any incorporated village in this State for the purchase of lands and/or property or equipment for public purposes, either upon an instalment plan, or by the acquisition of the deed and/or bill of sale of such property, to be paid for in instalments, are hereby authorized and validated and made legal for all purposes: Provided, That the total purchase price, exclusive of interest, shall not exceed one and one-fourth per cent. of the

assessed value of the real and personal property in such village at the date of such contract or agreement.

"The legislative body of any such village shall have authority and it shall be its duty to raise, by a general tax on the real and personal property liable for taxation in such village (exclusive of all other taxes) such sum or sums as may be necessary each year to meet the payments of such instalments, the interest thereon, when and as the same shall become due, including overdue instalments."

The total purchase price of the land is $15,000, which sum is less than one and one-quarter per cent. of $12,000,000, that being the assessed value of the property of the village in 1929.

In the circuit court plaintiffs had a decree for foreclosure, including provision for a deficiency decree. The defendant village has appealed; and contends that the contract was *ultra vires* and, therefore, not binding upon it. One of the provisions of the charter upon which appellant bases its claim of *ultra vires* is the italicized portion of the following section:

"No franchise or grant, which is not revocable at the will of the commission, shall be granted or become operative *nor contract for a longer term than one year made,* until the same shall have been referred to the people at a regular or special election and has received the approval of three-fifths of the electors voting thereon at such election." Charter, chap. 16, § 2.

The alleged contract here in suit is one "for a longer term than one year," and it was not submitted for approval to the electors, hence, if it is within the quoted charter provision, it is confessedly void. But appellees contend the contract is not within the above quoted charter provision. Their contention is that

the italicized portion of the charter provision is *ejusdem generis* of the preceding provision, *i. e.* that it is applicable only to contracts in the nature of franchises or grants. This contention is not tenable.

The rule or doctrine of *ejusdem generis* is only a rule of construction to be used as an aid in ascertaining the intent of the enacting body, regardless of whether it be a statutory provision or a charter provision. *Mid-Northern Co.* v. *Montana,* 268 U. S. 45 (45 Sup. Ct. 440) ; *Mason* v. *United States,* 260 U. S. 545 (43 Sup. Ct. 200). This rule should never be applied where the plain purpose and intent of the enacting body would thereby be hindered or defeated. A great many authorities to this effect might be cited. *Goldsmith* v. *United States* (C. C. A.), 42 Fed. (2d) 133, certiorari denied, 282 U. S. 837 (51 Sup. Ct. 26). Nor is the rule of *ejusdem generis* applicable when the specific words which precede the general term or terms embrace all objects of their class. In such case the use of the general term would be purposeless unless it were given a meaning differing from the specific words. *Jones* v. *State,* 104 Ark. 261 (149 S. W. 56, Ann. Cas. 1914 C, 302). If the language used is plain, the rule of *ejusdem generis* cannot be applied. *United States* v. *Gallagher & Ascher,* 12 Ct. Cust. App. 472. Like other rules of construction the primary purpose of this doctrine is to ascertain the intention of those who enacted the provision. *Ex parte Keane* v. *Strodtman,* 323 Mo. 161 (18 S. W. [2d] 896).

In the instant case a fair reading of the italicized provision, as well as consideration of its purpose, quite conclusively forbids the application of the rule of *ejusdem generis.* If the italicized provision read ''nor other like contract for a longer term than one year,'' clearly it would be *ejusdem generis.* It is to

be presumed that the charter provisions were drafted with care. If those who framed them intended to convey the meaning just above noted there can be little doubt they would have done so in some concise and simple manner such as that above suggested. Instead the italicized portion is complete in itself. Read in connection with other portions of the charter it has an obvious purpose. This purpose is to restrict the power of village officers from burdening future administrations with contractual obligations. The charter provides for annual budgets. Chapter 12, § 6. This provision of the charter would be rendered largely nugatory if the official administration of any one year, without the approval of a three-fifths vote of the electors, could make legally binding contracts extending into the future over a period of years. This is the very thing the charter conclusively seeks to prevent; but it is exactly the thing which the plaintiffs in this case contend has been done, and plaintiffs seek to maintain their position by invoking the rule of *ejusdem generis*.

It may also be noted that the charter provision requiring annual appropriations is such as to indicate strongly that the italicized portion of chapter 16, § 2 of the charter cannot be construed as *ejusdem generis*. In chapter 12, § 14 of the village charter it is provided:

"Neither the commission nor any officer or employee of the village shall have the authority to make any contract involving the expenditure of public money, or impose upon the village any liability to pay money until a definite amount of money shall have been appropriated for the payment of all pecuniary liability of the village under the contract or in consequence thereof and any contract entered into without such appropriation having been made, shall be *ab initio* null and void as to the village; provided,"

the foregoing shall not be applicable to emergency expenditures or bonded indebtedness with which we are not here concerned.

The pertinency and force of the charter limitation on the commission's power to contract "for a longer term than one year" is apparent when considered in connection with the charter provision just above quoted, which specifically requires an appropriation as a condition precedent to a valid contract. To hold that the charter limitation against entering into contracts for a longer term than one year is *ejusdem generis* is to construe it in a manner entirely inconsistent with chapter 12, § 14. Further the plain terms of section 14 above quoted necessitate the conclusion that the attempted contract was *ultra vires.*

In a somewhat similar manner the bearing of prior appropriation upon the validity of a contract was considered by us in *City of Pontiac* v. *Ducharme,* 278 Mich. 474. We there said:

"Appellant also asserts that no appropriation was made by the city to cover the contract obligation, as required by chapter 9, § 16 of the charter above quoted. If appellant were correct in this contention it would present a controlling question. *Stratton* v. *City of Detroit,* 246 Mich. 139; *Salzer* v. *City of East Lansing,* 263 Mich. 626."

But in the above case the record disclosed that a prior appropriation by way of bond issue had been made; hence the contract was there held not to be invalid because of lack of prior appropriation.

The remaining question is this: Does the remedial act of the legislature hereinbefore quoted (Act No. 99, Pub. Acts 1933) validate the contract on which plaintiffs base their alleged rights?

"The legislature may, by subsequent act, validate and confirm previous acts of a municipal corporation

otherwise invalid. If the act could have been lawfully performed or done under precedent legislative authority, the legislature may subsequently ratify it and give it effect. 1 Dillon, Municipal Corporations (5th Ed.), § 129. * * *

" 'Subsequent legislative sanction *within constitutional limits* is equivalent to original authority.' 2 Dillon, Municipal Corporations (5th Ed.), § 948.

" 'The whole may be summed up in a single sentence: that the legislature cannot make valid, retrospectively, what they could not originally have authorized.' *People, ex rel. Butler,* v. *Board of Supervisors of Saginaw County,* 26 Mich. 22.'' *Chemical Bank & Trust Co.* v. *County of Oakland,* 264 Mich. 673, 680.

A controlling consideration which distinguishes the instant case from *Chemical Bank & Trust Co.* v. *County of Oakland, supra,* is this: In that case the act which was held to have been validated by subsequent legislation was not an act in violation of the then existing law; but in the instant case the contract by which the commission sought to bind the village was in violation of existing law, and under the Constitution the legislature did not have the power to change the law as embodied in the charter without a ratifying vote of the village electors.

The Constitution of this State contains mandatory provisions directing the legislature to provide by general law for the incorporation of cities and villages.

"The legislature shall provide by a general law for the incorporation of cities, and by a general law for the incorporation of villages; such general laws shall * * * restrict their powers of borrowing money and contracting debts.

"Under such general laws, *the electors of each city and village shall have power and authority to frame, adopt and amend its charter.''* Const. 1908, art. 8, §§ 20, 21.

Pursuant to the constitutional mandate the legislature passed Act No. 278, Pub. Acts 1909, We quote provisions of the act, as amended, from the Compiled Laws of 1929:

"All villages that now are incorporated or hereafter may be incorporated under the provisions of this act shall be subject to all general laws which have been or may hereafter be passed." 1 Comp. Laws 1929, § 1763.

"Every such amendment (to a village charter) shall be submitted to the electors at the next general or special election." 1 Comp. Laws 1929, § 1779.

The charter of the village of Oak Park provides:

"Amendments to this charter may and shall be made in accordance with the provisions of the general laws of the State of Michigan." Chapter 17, § 5.

From the foregoing it appears that by constitutional provision, as well as by statutory and charter provisions, the power and authority to amend its charter is vested in the village electors. In view of the power vested in the electors by the Constitution it must follow that as to provisions pertaining purely to local matters the legislature does not have the power to alter or amend a village charter without the approval of the village electors. As hereinbefore noted, this village charter expressly provides that no "contract for a longer term than one year" shall be made until the same shall have been referred to the people at a regular or special election and has received the approval of three-fifths of the electors voting thereon. Charter, chap. 16, § 2. Clearly then, the attempt of the members of the village commission to make the contract in suit, was in direct violation of the provisions of the charter. It was void.

Such a contract could not be made in behalf of the village solely by the members of the commission without there being an amendment to the village charter. The subsequent curative act of the legislature, by reason of the provision in the Constitution above quoted, could not amend the village charter. Hence the act of the legislature did not and could not make this invalid contract binding upon the village. To hold otherwise is to hold not only that the legislature could amend the village charter, but that the legislature had the power to make the contract for the village. Surely no one, in view of the constitutional, statutory and charter provisions noted herein, could successfully assert that the legislature had the power to make a contract of this character in behalf of the defendant village. It follows that notwithstanding the remedial act of the legislature, the contract under which plaintiffs assert their rights was void in its inception and still remains so.

We are not in accord with appellees' contention that this contract should be held valid because it has been ratified by subsequent acts of village officials. As against the objection of a municipal corporation a void contract cannot be ratified by its officers who were without power to make a valid contract in the first instance.

"It is fundamental that those dealing with public officials must take notice of their powers. *McBrian* v. *City of Grand Rapids,* 56 Mich. 95, 108; *Campau* v. *City of Detroit,* 106 Mich. 414, 418." *Schneider* v. *City of Ann Arbor,* 195 Mich. 599, 608.

"Persons dealing with a municipal corporation through its officers must at their peril take notice of the authority of the particular officer to bind the corporation. If his act is beyond the limits of his author-

ity, the municipality is not bound.''   *Rens* v. *City of Grand Rapids,* 73 Mich. 237, 247.

See, also, *Moore* v. *City of Detroit,* 164 Mich. 543.

''It is agreed that it (the village) had no power to enter into such a contract.   Therefore it could not be bound as by a ratification of it.''   *Reed City* v. *Reed City Veneer & Panel Works,* 165 Mich. 599.

Because the contract here in suit was void *ab initio,* it could not be and was not validated by ratification through acts of municipal officers.

To avoid possible misconstruction it should be noted that our opinion herein is not to be read as circumscribing the power of the legislature within constitutional limitations to amend home rule acts and render such amendments applicable to existing charters, at least as to matters of general concern and not of a purely local character.

From the foregoing it follows that the plaintiffs are not entitled to recover, that the decree entered in the circuit court must be vacated and plaintiffs' bill of complaint dismissed.   Further, the defendant under the prayer of its cross-bill is entitled to have returned to it the $6,845 which defendant has paid to the vendors under the void land contract, together with interest thereon from the date of filing the cross-bill herein.   Defendant will have costs of both courts.

FEAD, C. J., and WIEST, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred.   POTTER and CHANDLER, JJ., did not sit.