Fletcher Long, Jr., Prosecuting Attorney, First Judicial District, Post Office Box 365 Forrest City, AR 72336
Dear Mr. Long:
I am writing in response to your request for my opinion on the following questions:
Is it a criminal offense for a county official to overspend his appropriation in a given calendar year?
If a county official overspends his appropriation in a given calendar year, but the county receives goods and/or services as a result of the overexpenditure, does the county have a civil cause of action against the public official to recover all or any part of the overexpenditure?
RESPONSE
I am unable to answer either of these questions without knowing the particular circumstances giving rise to your request. I can, however, set forth the legal standards a court might apply in addressing a particular challenge.
Question 1: Is it a criminal offense for a county official to overspend his appropriation in a given calendar year?
I cannot definitively answer this question because you have supplied no details regarding the factual background giving rise to your request, which leaves unaddressed, for instance, such potentially pertinent information as (1) which county official "overspen[t] his appropriation," (2) how it is that the official might have managed to "overspend his appropriation" under a system that is geared to check any allowances and warrants against particular appropriations to ensure the availability of funds before the issuance of payment and (3) whether the overspending involved any willful misconduct on the part of the county official in question. Without this type of information, I can do little more than set forth certain generally applicable principles of law.
Article 12, § 4 of the Arkansas Constitution, as amended by Ark. Const. amend. 10, addresses the issue of county "overspending" as follows:
The fiscal affairs of counties, cities and incorporated towns shall be conducted on a sound financial basis, and no county court or levying board or agent of any county shall make or authorize any contract or make any allowance for any purpose whatsoever in excess of the revenue from all sources for the fiscal year in which said contract or allowance is made; nor shall any county judge, county clerk or other county officer, sign or issue any scrip, warrant or make any allowance in excess of the revenue from all sources for the current fiscal year. . . .
* * *
Where the annual report of any city or county in the State of Arkansas shows that scrip, warrants, or other certificate of indebtedness had been issued in excess of the total revenue for that year, the officer of officers of the county or city or incorporated town who authorized, signed or issued such scrip, warrants or other certificates of indebtedness shall be deemed guilty of a misdemeanor and upon conviction thereof, shall be fined in any sum not less than five hundred dollars nor more than ten thousand dollars, and shall be removed from office.
(Emphasis added.) See A.C.A. § 14-23-107 (Repl. 1998) (charging the prosecuting attorney in each judicial district with enforcing this provision).
This constitutional proscription is designed to ensure that total county expenditures in any given fiscal year not exceed total revenues realized in that year. Taylor v. J.A. Riggs Tractor Co., 197 Ark. 383,122 S.W.2d 608 (1938). The provision does not appear necessarily concerned with whether an official has exceeded his budget in a particular year. Rather, it subjects to criminal liability only those individuals who authorize expenditures in excess of total county revenues — a proscription that might logically be read as applying only to whatever expenditures actually pushed the county "over the top" by exceeding revenues. With respect to your specific question, then, this provision would not apply to an official who had "overspen[t] his appropriation" without in the process exceeding total county revenues for any given fiscal year.
As a general proposition, in addition to the constitutional sanction contained in article 12, § 4, the Code contains various sections attaching criminal liability to the financial activities of county officials. Section 14-22-103 (Repl. 1998) declares it a misdemeanor, subject to a fine and removal from office, for any county official to violate the procedures for purchasing commodities set forth in title 14, chapter 22 of the Code (Repl. 1998 Supp. 2005). Section 14-23-202
(Repl. 1998) declares it a misdemeanor, subject to removal from office, for any county official to violate the rules with respect to the handling of claims presented to the county. Subsection 14-23-106(b) (Repl. 1998) more specifically declares it a misdemeanor, subject to a fine and removal from office, for a county court, a county judge or a county clerk to willfully violate or neglect to perform his duties under Acts 1873, No. 31, which addresses the handling of claims against the county and specifically proscribes paying any claimant more than he is due. Subsection 14-14-1202(d)(3) (Supp. 2005) further declares it a misdemeanor, subject to a fine and removal from office, for any county official to violate the ethical rules of conduct set forth in that section. Finally, it is conceivable that a county official's intentional misappropriation of county funds might constitute embezzlement, which constitutes a variety of theft subject to felony prosecution pursuant to A.C.A. §§ 5-36-102 and-103 (Repl. 2006). Being unaware of the circumstances at issue in your request, I cannot opine regarding which, if any, of these statutes might apply.
Having recited these various criminal violations, I must add that it is difficult to envision as a practical matter how a particular county official could, in fact, "overspend his appropriation." As discussed immediately below, the pertinent statutes, if followed, would preclude this occurrence happening.
Pursuant to standard operating procedure, the quorum court, armed with data supplied by the treasurer reflecting available funds and projected revenues, prepares an annual budget and appropriates funds to the various county agencies and offices. Specifically, A.C.A. § 14-14-907
(Repl. 1998) provides in pertinent part:
(a)(1) Generally. An appropriation ordinance or amendment to an appropriation ordinance is defined as a measure by which the county quorum court designates a particular fund, or sets apart a specific portion of county revenue in the treasury, to be applied to some general object of expenditure or to some individual purchase or expense of the county.
* * *
(3)(B) The enactment of specific appropriations by which a specified sum has been set apart in the treasury and devoted to the payment of a particular demand. Specific appropriations may be enacted through the adoption of an annual budget, a statement of estimated receipts and expenditures, in a manner prescribed by law.
Section 14-20-103 (Supp. 2005) further provides in pertinent part:
(a) The county quorum court shall specify the amount of appropriations for each purpose in dollars and cents, and except as authorized in subsections (c) and (d) of this section, the total amount of appropriations for all county or district purposes for any one (1) year shall not exceed ninety percent (90%) of the anticipated revenues for that year, except for federal or state grants overseen by counties which the court may appropriate up to one hundred percent (100%) of the anticipated revenues for that year.
The statute further authorizes exceeding this 90% limitation in cases of natural disaster or when sales and use tax revenues have been dedicated to a specific purpose. A.C.A. §§ 14-20-103(c)(1) and-103(d)(1).[1]
I am informed that the projection of revenues under A.C.A. § 14-20-103
is normally relatively conservative, meaning that it is practically unlikely and quite rare for appropriations and expenditures under a county budget in aggregate to exceed annual revenues for a given fiscal year. I am further informed that amounts appropriated to a particular office are frequently segregated into general categories, with specific appropriations for particular purchases or contracts for services possibly contained within the various categories. My inquiries suggest that, as a general rule, variances frequently exist between amounts budgeted for expenditures on specific items or services and amounts actually expended[2] — discrepancies reportedly reconciled by an omnibus quorum court ordinance in January or February amending the budget as authorized in A.C.A. § 14-14-907(a)(1).
With respect to the mechanism of actually expending amounts appropriated, an appropriation will in the normal course of events result in the county judge's issuance of `allowances' authorizing the release of funds, as reflected in the following from A.C.A. § 14-20-104
(Repl. 1998):
(a) Every order of allowance made by the county court shall set forth the appropriation out of which it is to be paid.
(b) It shall be the duty of the clerk annually, and immediately after the adjournment of the county quorum court for the levy of taxes and the making of the appropriations, to open a book to be kept for that purpose, in which he shall debit each appropriation by the amount appropriated therefor, and as the allowances are made by the county court, he shall credit each appropriation by the allowance ordered to be paid out of such appropriation.
Section 14-20-106 (Repl. 1998) similarly provides:
No county court or agent of any county shall make any contract on behalf of the county unless an appropriation has been previously made therefor and is wholly or in part unexpended. In no event shall any county court or agent of any county make any contract in excess of any appropriation made, and the amount of the contract shall be limited to the amount of the appropriation made by the county quorum court.
Notwithstanding the reference in these statutes to the "county court,"[3] in the wake of the adoption in 1974 of Ark. Const. amend.55, which charged the county judge with chief executive powers in county government, it is apparent that the county judge alone, not the county court, is now authorized to make allowances of county expenses. This shift of authority is reflected in the enabling legislation to Amendment 5, A.C.A. § 14-14-1101 (Repl. 1998), which provides in pertinent part:
(a) Arkansas Constitution, Amendment 55, § 3, established the following executive powers to be administered by the county judge:
* * *
(2) To authorize and approve disbursement of appropriated county funds[.]
More specifically, A.C.A. § 14-14-1102 (Repl. 1998) provides in pertinent part:
(a) Performance. The General Assembly determines that the executive powers of the county judge as enumerated in Arkansas Constitution, Amendment 55, § 3, are to be performed by him in an executive capacity and not by order of the county court.
(b) Procedures. In the exercise of the executive powers of the county judge as enumerated, the county judge shall adhere to the following procedures:
* * *
(2) Authorization and Approval of the Disbursement of Appropriated County Funds. (A)(i) All vouchers for the payment of county funds out of the county treasury shall be approved and filed by the county judge or his designated representative, who shall be appointed by executive order of the judge and who shall be bonded in an amount equal to the county judge's bond in the manner provided by law.
* * *
(B) Before approving any voucher for the payment of county funds, the county judge, or his designated representative, shall determine that:
(i) There is a sufficient appropriation available for the purpose and there is a sufficient unencumbered balance of funds on hand in the appropriate county fund to pay therefor;
(ii) The expenditure is in compliance with the purposes for which the funds are appropriated;
(iii) All state purchasing laws and other state laws or ordinances of the quorum court are complied with in the expenditure of the moneys;
(iv) The goods or services for which expenditure is to be made have been rendered and the payment thereof has been incurred in a lawful manner and is owed by the county. . . .
(C)(i) No money shall be paid out of the treasury until it shall have been appropriated by law and then only in accordance with the appropriation. . . .
Under current law, the county judge is charged with evaluating contractual expenditures for the various offices and agencies, as well as executing those contracts on behalf of the county. As provided in A.C.A. § 14-14-1102(b)(2)(C)(ii):
The county judge shall have the authority to enter into necessary contracts or other agreements to obligate county funds and to approve expenditure of county funds appropriated therefor in the manner provided by law.[4]
With respect to service contracts, A.C.A. § 14-14-1102(b)(5)(A) further provides:
The county judge, as the chief executive officer of the county, shall be responsible for the employment of the necessary personnel or for the purchase of labor or services performed by individuals or firms employed by the county, or an agency thereof, for salaries, wages, or other forms of compensation.
(Emphasis added.) With respect to a county's purchase of commodities, A.C.A. § 14-22-112(a) (Repl. 1998) provides:
No contract shall be awarded or any purchase made until it has been approved by the county court,[5] and no contract shall be binding on any county until the court shall have issued its order of approval.
Subject to certain statutory exceptions such as the authority of elected officials to hire their own employees, see A.C.A. §14-14-1102(b)(5)(B)(ii)(b), the power to contract for the county thus resides exclusively in the county judge. See, e.g., Ark. Ops. Att'y Gen. Nos. 2006-124 (opining that a sheriff could not unilaterally contract with a private company to provide inmate telephone services in the county jail); 97-039 (opining that a sheriff could not unilaterally contract with an individual to collect on hot checks); 93-049 (opining that a sheriff could not unilaterally purchase a vehicle for his official use from county tax collector's commissions).
As set forth in A.C.A. § 14-24-101 (Repl. 1998), the actual payment by county warrant or check should proceed as follows:
(a) Whenever any allowance has been made by any county court [sic: "county judge"] . . ., the county clerk shall issue his warrant or check on the treasurer of his county for the amount of the allowance. The treasurer shall pay it out of cash available in the fund on which the warrant or check is drawn.
(b)(1) If money is not available in the fund on which the warrant or check is drawn, the treasurer, in accordance with § 14-15-805,[6]
shall refuse payment of the warrant or check until such time as the funds are available.
Subsection 14-24-204(a)(1) of the Code (Repl. 1998) directs the county clerk to present to the county treasurer for payment a check for the discharge of an authorized claim, accompanied by a certification from the clerk that the claim is valid. Subsection (b) of this statute in effect sets forth an alternative procedure, whereby the county clerk's independent certification is effectively bypassed and the treasurer, based upon the county judge's allowance, will issue a check as available funds warrant. See Ark. Op. Att'y Gen. No. 2006-098 (discussing in detail the record-keeping procedures to be followed by the clerk and the treasurer in effecting payment under this statute).
The upshot of the foregoing is that the county judge has the ultimate authority both to contract on behalf of the county and to allow claims against the county, subject to ministerial review by the county clerk and/or the treasurer. Given the controls described above, it is difficult to envision how a county official could "overspend his appropriation in a given calendar year." As a general proposition a county agency or official must live within the appropriation allotted by the quorum court unless it is unreasonable, in which case it can be further funded only by filing a claim as provided by law. Union County v. Union County Election Commission, 274 Ark. 286, 291, 623 S.W.2d 827
(1981). Having offered this conclusion, I must again stress that I have not been apprised of the particular circumstances that gave rise to your question, rendering me unable specifically to address your issue.
Question 2: If a county official overspends his appropriation in a given calendar year, but the county receives goods and/or services as a result of the overexpenditure, does the county have a civil cause of action against the public official to recover all or any part of the overexpenditure?
I gather that your hypothetical involves a county official's entering into an unauthorized contract triggering performance by and payment to the contractor. As reflected in my response to your previous question, this scenario would not accord with the procedural requirements for discharging claims against the county. Your question appears to assume that the contractor has been paid and the county wishes to seek restitution from the official for amounts paid that were not authorized in the initial appropriation. You have not inquired, and I consequently will not address, whether full payment to the contractor might have been warranted on a theory of quantum meruit, which might entitle a contractor to recover the fair-market value of his services notwithstanding the invalidity of a contract. I take your question to be only whether the county might recover from an official expenses incurred by the county as the result of the official's unauthorized commitment of county resources.
Without knowing the factual background, I am unable even to opine whether the county might be under some legal obligation to pay the contractor, much less whether the county might have a right of recovery against the official who negotiated the purported contract. In Opinion No. 2006-124, my immediate predecessor addressed as follows the effect of a contract negotiated on behalf of the county by an official lacking the authority to do so:
The resolution of the issue will involve an analysis of all the surrounding facts. Different facts can lead to different outcomes. See e.g., Goodwin v. State, 235 Ark. 457, 464, 360 S.W.2d 490 (1962) (holding "void" contracts executed in violation of Arkansas Constitution, art. 12, § 4 and stating that "[h]aving held the contracts were `void' they could not be ratified"). But see also, American Federation of State, County and Municipal Employees, Local 380 v. Hot Spring County, Arkansas, 362 F.Supp.2d 1035 (W.D. Ark. 2004), (citing Watson v. Union County, 193 Ark. 559, 101 S.W.2d 791 (1937) and Leathern Company v. Jackson County, 122 Ark. 114, 182 S.W. 570 (1916) for the proposition that a "county may . . . ratify an unauthorized contract made in its behalf, if it is one the county could have made in the first instance. Such ratification will be equivalent to original authority[.]"). See also, McCuistion v. City of Siloam Springs,268 Ark. 148,151, 594 S.W.2d 233 (1980) (citing cases to the effect that "a void or illegal contract does not necessarily prevent recovery"); City of Damascus v. Bivens, 291 Ark. 600, 602 726 S.W.2d 677 (1987) (stating that: "We have permitted restitution based on unjust enrichment even when the associated contract was `void[.]'); and Crawford v. Lee County School District, 64 Ark. App. 90, 97, 983 S.W.2d 141 (1998) (noting, however, that "[i]n order for the legal theory of unjust enrichment to pertain, there must be some enrichment or benefit to the party against whom the claim is made"). I am not invested as a fact finder in the issuance of official Attorney General Opinions. The prosecuting attorney, as well as individual taxpayers, has been held a proper party to bring an action challenging an unauthorized county contract. See e.g., Goodwin v. State, supra.
All of the cases recited dealt with the rights of a claimant against a political subdivision, not with the right of a political subdivision to seek recovery from a public official who had purported to negotiate a contract, perhaps with apparent authority upon which a claimant may reasonably have relied.
As reflected in the foregoing, determining the legal options a county might have against an official will depend upon the particular facts. The Code contains no express directive authorizing a county to seek restitution from an official for damages resulting from the official's "overspend[ing] his appropriation." In my opinion, misconduct with respect to an official's budget would in all likelihood be subject to the proscriptions discussed in my response to your first question, as well as to the proscription against nonfeasance or malfeasance in office, which my immediate predecessor discussed as follows:
[T]he failure to perform the duties of one's office might amount to nonfeasance, if based purely upon negligence, or to malfeasance, if the failure is based upon some intentional, impermissible motivation. In this regard, Ark. Const. art. 7, § 27, which applies to county and township officials, provides:
The circuit court shall have jurisdiction upon information, presentment or indictment to remove any county or township officer from office for incompetency, corruption, gross immorality, criminal conduct, malfeasance, misfeasance or nonfeasance in office.
This provision refers to conduct occurring in a present term of office. Rice v. State, 204 Ark. 236, 161 S.W.2d 401 (1942) and Jacobs v. Parham, 175 Ark. 86, 298 S.W. 483 (1927). It is not limited to felonies, or even to criminal conduct. See, e.g., Jones v. State, 104 Ark. 261,149 S.W. 56 (1912), and Wills, "Constitutional Crises: Can the Governor (or other State Officeholder) be Removed From Office In a Court Action After Being Convicted of a Felony?" 50 Ark. L. Rev. 221 (1997). Accord A.C.A. §§ 14-14-1313 and 14-14-1308(8). Again, only a finder of fact acquainted with all the pertinent circumstances could determine whether these constitutional and statutory provisions might apply in any given instance.
Ark. Op. Att'y Gen. No. 2005-189. I am unaware of any authority that would make a county official personally liable for exceeding his budget, however that circumstance might arise. However, I must stress again that I am unable to offer a firm opinion on this matter without knowing all of the attendant circumstances.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] Upon its effective date, Acts 2007, No. 17, which was approved on January 29, 2007, will increase the funds that may be appropriated from dedicated sales and use tax revenues from 95% to 100% of anticipated revenues.
[2] As a purely hypothetical example of how such discrepancies might arise, the volatility of gasoline prices might result in a sheriff's department inevitably exceeding its budget for gasoline purchases within some broader appropriated category.
[3] As stated in Ark. Op. Att'y Gen. No. 2004-139 and echoed most recently in Ark. Op. Att'y Gen. No. 2006-011:The "county court" strictly speaking, is neither the "county judge" nor the quorum court. It is, however, presided over by one judge, the "county judge," who, when so presiding, acts in a judicial, rather than an executive capacity. See Arkansas Constitution, art. 7, § 28 and A.C.A. § 14-14-1105(a). . . . [I]t clearly still exists, and consists of the county judge, wearing a judicial hat." Id. at fn 1, quoting Op. Att'y. Gen. 1997-081. In addition, the jurisdiction of the county court over juveniles and bastardy matters has been altered by Amendment 67.
[4] Notwithstanding my conclusion that this implementing legislation vests the exclusive power to contract for the county in the county judge, certain pre-Amendment 55 legislation continues to list the county court as the appropriate contracting officer. See, e.g., A.C.A. §14-22-112 (Repl. 1998) (providing that no contract for the purchase of commodities will be made, no claim for payment on the sale of commodities will be paid and no warrant for a sale of commodities will issue until approved by the "county court"). Moreover, in at least one instance since the adoption of Amendment 55 and the enactment of its implementing legislation, a court has suggested in dictum that a county contract was void because "no order of the county court was passed or signed authorizing the county judge to enter into this transaction." Dean Leasing, Inc. v. Van Buren County, 27 Ark. App. 134, 135,767 S.W.2d 316 (1989). I characterize this pronouncement as dictum because the parties in Dean had stipulated that the contract was void with respect to the county, leaving for adjudication only the separate question of whether a private guarantor might nevertheless be held liable. However characterized, I do not believe post-Amendment 55 law supports the court's oblique suggestion that the county court's failure to participate in the transaction bore in any way on the contract's validity. No court has subsequently invoked Dean in support of any such proposition.
[5] As noted above, in the wake of Amendment 55, the reference to the "county court" should be to the "county judge."
[6] This statute obligates the treasurer to disburse available funds on authorized warrants and checks to the extent funds are available to do so. *Page 1