PEOPLE v BROWN

OPINION OF THE COURT

1. WEAPONS—CARRYING WEAPONS—DANGEROUS WEAPONS—MACHETES
   —STABBING WEAPONS—USE OF ARTICLE CARRIED—STATUTES.

The language of the statute prohibiting the carrying in an
automobile of daggers, dirks, stilettos "or other dangerous
weapons except hunting knives adapted and carried as such"
evinces a legislative intent to punish as a felony the carrying in
a vehicle of any dangerous stabbing weapon other than knives
carried for hunting; a machete, carried in an automobile, if
pointed and functional as a stabbing weapon, is covered by the
statute (MCLA 750.227; MSA 28.424).

2. WEAPONS—CARRYING WEAPONS—MACHETES—USE AND INTENT—
   UNLAWFUL USE—STATUTES.

Carrying a machete in an automobile, contrary to the statute
proscribing such activity, is unlawful notwithstanding a lack of
intent to unlawfully or assaultively use the machete (MCLA
750.227; MSA 28.424).

3. APPEAL AND ERROR—CRIMINAL LAW—PROSECUTOR'S QUESTIONING—
   LURID AND SENSATIONAL—DANGEROUS WEAPONS—MACHETES—
   DECAPITATION.

A prosecutor's questioning of a defendant in a trial for carrying a
dangerous weapon, a machete, in a motor vehicle regarding
war movies allegedly depicting the decapitation of prisoners
with machetes smacks of the lurid and sensational and should
not have been asked, but it was not an improper area of
examination where defendant admitted the machete's potential
utility as a dangerous weapon.

DISSENT BY BASHARA, J.

4. STATUTES—CONCEALED WEAPONS STATUTE—STRICT LIABILITY—PRO-
   SCRIBED ARTICLES.

*The concealed weapons statute imposes strict criminal liability*

REFERENCES FOR POINTS IN HEADNOTES

[1–3, 5, 6] 79 Am Jur 2d, Weapons and Firearms §§ 1, 2, 26, 27.
[4] 79 Am Jur 2d, Weapons and Firearms § 8 *et seq.*
   Offense of carrying concealed weapon as affected by manner of
   carrying or place of concealment. 43 ALR2d 492.

for the unlawful carrying of certain types of specifically proscribed articles (MCLA 750.227; MSA 28.424).

5. WEAPONS—CONCEALED WEAPONS—STABBING WEAPONS—PROSCRIBED
ARTICLES—MACHETES—USE OF MACHETE—STATUTES.

A machete may not properly be found to be a stabbing weapon proscribed by the concealed weapons statute where the only evidence introduced to establish its potential for use as a stabbing instrument was that in the eight months during which the defendant possessed it it had been used only to shorten some trousers and occasionally to chop tree limbs (MCLA 750.227; MSA 28.424).

6. WEAPONS—CONCEALED WEAPONS—OTHER DANGEROUS WEAPONS—
MACHETES—USE OF MACHETE—PROSCRIBED ARTICLES—STATUTES.

The Legislature intended the words "other dangerous weapon" as used in the statute proscribing the carrying of certain weapons in an automobile or concealed on the person to mean any article or instrument which the carrier used, or carried for the purpose of using, as a weapon for bodily assault or defense; a common jackknife unless carried for the purpose of use as a weapon does not come under the statute's proscription and neither should a machete which is carried and used for the same purposes as a jackknife; the question of intended use of an instrument so carried which has potential as a weapon is for a jury (MCLA 750.227; MSA 28.424).

Appeal from Wayne, George T. Martin, J. Submitted June 22, 1977, at Detroit. (Docket No. 28377.) Decided September 20, 1977. Leave to appeal applied for.

Tommy J. Brown was convicted of carrying a dangerous weapon in a motor vehicle. Defendant appeals. Affirmed.

*Frank J. Kelley*, Attorney General, *Robert A. Derengoski*, Solicitor General, *William L. Cahalan*, Prosecuting Attorney, *Edward R. Wilson*, Principal Attorney, Appeals, and *Maura D. Corrigan*, Assistant Prosecuting Attorney, for the people.

*Domnick J. Sorise*, Assistant State Appellate Defender, for defendant on appeal.

Before: D. C. RILEY, P. J., and BASHARA and P. R. MAHINSKE,* JJ.

D. C. RILEY, P. J. The instant appeal, occasioned by defendant's jury-based conviction for carrying a weapon in a motor vehicle, MCLA 750.227; MSA 28.424, raises *inter alia* the question whether a machete is a "dangerous weapon" under the cited statute.

In pertinent part, the statute provides: "A person who shall carry a dagger, dirk, stiletto or other dangerous weapon except hunting knives adapted and carried as such, * * * whether concealed or otherwise in any vehicle operated or occupied by him * * * shall be guilty of a felony, punishable by imprisonment in the state prison for not more than 5 years, or by fine of not more than 2,500 dollars." MCLA 750.227; MSA 28.424.

The events prompting defendant's prosecution are undisputed. On August 10, 1975, two police officers, having pulled defendant over for a minor traffic infraction, discovered a rusty, black-handled machete protruding from under the rear of the driver's seat in defendant's car. The machete, although entered as an exhibit at trial,[1] has since been destroyed. We are unaware of its exact dimensions and uncertain whether it was blunt-ended or pointed.

The defendant, aged 18 at the time of trial, testified that he was 14 when he purchased a $1.98 department-store machete as an addition to his knife collection. According to his testimony, defendant used the instrument to throw at trees for sport and to chop tree limbs. On one occasion, he placed the machete in the trunk of his car to

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] This is defendant's second trial on the instant charge.

transport it to a friend's farm. It remained in the trunk for eight months until defendant used it to shorten a pair of trousers for swimming:

"A. *[The Defendant]* I went to the beach one day, me and some other guys, and one of my friends didn't have any short pants, so we took the machete and cut off the long pants, to shorts, more or less; ripped them and cut them, because this machete wasn't so sharp.

"Q. *[Defense Attorney]* After that was done, where did you put the machete?

"A. *[The Defendant]* Just underneath my front seat."

Apparently, the machete remained under the front seat until its discovery by the police.

During cross-examination, the prosecutor attempted to demonstrate defendant's awareness that a machete is a dangerous weapon. At first, defendant indicated that it never occurred to him that machetes could be used as weapons:

"Q. Did you ever hear about these things being used before as weapons?

"A. No, sir.

"Q. You never did?

"A. Never have.

"Q. What did you think the purpose of these was?

"A. Chopping down trees.

"Q. Did you ever hear about World War II?

"A. No, sir, but I have watched enough movies.

"Q. Did you ever see the Phillippine *[sic]* movies?

"A. Yes, sir.

"Q. Did you ever see those movies where perhaps—

"MR. FOWLER *[DEFENSE ATTORNEY]*: Your Honor, I'm going to object. I don't know what is material about the movies he has seen.

"MR. PHILLIPPART *[PROSECUTING ATTORNEY]*: It's cross examination, your Honor. I think perhaps we

can get to the point where he might have known these could be used as a weapon.

"MR. FOWLER: I'm not sure what movies he's talking about. I don't know if he's going to bring movie projectors in here to show the movies. I think we're going far afield.

"THE COURT: Within limits, of course, Mr. Phillippart.

"Q. *(By Mr. Phillippart)* Did you ever see a machete used in the movies as a weapon?

"A. I never did realize it.

"Q. Never did realize it?

"A. No, I never did really look at the weapons that way.

"Q. Never did?

"A. No. I don't like to see bloody pictures and things like that.

"Q. You never saw Philippinos lob off Japanese heads with a machete?

"A. No, not that kind.

"Q. What kind?

"A. Bigger ones.

"Q. Bigger ones?

"A. Yes.

"Q. In your opinion, do you think this might lob off a head?

"MR. FOWLER: That would call for a conclusion by the witness, your Honor.

"THE COURT: All right.

"Q. (By Mr. Phillippart) In your opinion, do you think this could be used as a weapon?

"A. It could be used as a weapon.

"Q. Is that why you kept it in the trunk of your car for these 8 months?

"A. At the beginning of the 8th month, I put it in my car to go over to a friend's house. I threw it back in the trunk and I didn't realize it was there until one day I remembered.

"Q. But you said you normally carried it in the trunk of your car.

"MR. FOWLER: Objection, that wasn't—he said he

had it in the trunk for 8 months, he didn't say he normally had it in the trunk.

"THE COURT: Objection sustained."

On appeal, defendant asserts that under *People v Smith,* 393 Mich 432; 225 NW2d 165 (1975), only stabbing weapons are proscribed by MCLA 750.227; MSA 28.424; that "a machete does not have a point";[2] that "[t]he likely result of trying to stab someone with a machete would be the physical alteration of the wielder's hand"; and that, given a machete's ineffectiveness as a stabbing weapon, this Court should quash the information and discharge defendant. He also raises issues regarding the prosecutor's conduct, the charge to the jury and double jeopardy.

In *Smith, supra,* a prosecution for possession of an M-1 rifle in a motor vehicle, the Supreme Court stated:

"No one suggests that an M-1 rifle is not a dangerous weapon. The question is whether this statute [MCLA 750.227; MSA 28.424] proscribes the carrying of *all* dangerous weapons or only those of the types specified.

"In construing statutes in an effort to ascertain and give effect to the legislative interest *[sic],* courts are guided by a rule of construction known as *'ejusdem generis'.*

"This is a rule whereby in a statute in which general words follow a designation of particular subjects, the meaning of the general words will ordinarily be presumed to be and construed as restricted by the particular designation and as including only things of the same kind, class, character or nature as those specifically enumerated. See 73 Am Jur 2d, Statutes, § 214, pp 407–408.

"Thus here the phrase 'or other dangerous weapon

---

[2] (Emphasis added.) Defendant's appellate counsel, who did not represent defendant below, made this statement at oral argument.

except hunting knives adapted and carried as such' following those specified types of stabbing weapons, under the rule would be limited to stabbing weapons. As to that part of the statute we see no intent to include firearms of any sort in the phrase 'other dangerous weapon'." *Id.,* at 436.

This extract represents a departure from the Court's previous interpretation of MCLA 750.227; MSA 28.424. In *People v Vaines,* 310 Mich 500; 17 NW2d 729 (1945), a case not cited by the *Smith* Court, Chief Justice STARR, writing for a unanimous Court, opined:

"It is manifest that there are many articles or instruments, other than daggers, dirks and stilettos, which might properly come within the scope of the term 'dangerous weapon' if they were used or carried for use as weapons. For example, pocket knives, razors, hammers, hatchets, wrenches, cutting tools, and other articles which are manufactured and generally used for peaceful and proper purposes, would fall within the category of dangerous weapons if used for or carried for the purpose of assault or defense. Whether or not such articles are dangerous weapons, within the meaning of that term as used in section 227 [MCLA 750.227; MSA 28.424], would depend upon the use which the carrier made of them.

\* \* \*

"Daggers, dirks, stilettos, metallic knuckles, slung shots, pistols, and similar articles, designed for the purpose of bodily assault or defense, are generally recognized as dangerous weapons *per se.* Other articles and instruments become dangerous weapons only when they are used or carried for use as weapons. Therefore, in a prosecution under section 227 it becomes a question of fact for court or jury determination as to whether or not such articles or instruments are used or carried for the purpose of use as weapons of assault or defense. *People v Gogak, supra.* [205 Mich 260; 171 NW 428 (1919)]."

"We are convinced that the legislature intended the words 'other dangerous weapon,' as used in section 227, to mean *any concealed article or instrument which the carrier used, or carried for the purpose of using, as a weapon for bodily assault or defense.* The legislature certainly did not intend to include as a dangerous weapon the ordinary type of jackknife commonly carried by many people, unless there was evidence establishing that it was used, or was carried for the purpose of use, as a weapon." *Id.,* at 504–506. (Emphasis supplied.)

While established precedent should not be blithely or impliedly cast aside, we read *Smith* as nothing less than a *sub silentio* rejection of the principles espoused in *Vaines.* That is not to say, however, that the statutory interpretation undertaken in *Smith* is beyond reproach. See *People v Diericks,* 60 Mich App 603, 604–605; 231 NW2d 422 (1975). A tenable construction, we believe, would have been to read the exclusionary language of the statute (" * * * except hunting knives adapted and carried as such") as evincing a legislative intent to punish the possession in a vehicle of any dangerous weapon other than knives adapted and carried for hunting.[3] This interpretation meshes well with the expansive, but unrecognized, language of *Vaines, supra,* and with the probable legislative design of the statute, namely, preventing the transport in a vehicle, or the concealment on one's person, of weapons that can inflict injury or death on the citizenry. Moreover, this interpretation acknowledges the settled principle that *ejusdem generis* is but an aid in the elucidation of legislative intent:

---

[3] Of course, our interpretation should be read in tandem with the rule in *Vaines* requiring not only possession but also evidence showing the instrument to have been used or carried for use as a weapon of assault or defense.

*"[E] jusdem generis* is not to be invoked in every case where general words follow (or possibly precede) specific words. For example, it applies only where the specific words relate to subjects of a single kind, class, character, or nature, as noted above. In all events, the rule is useful only for the purpose of aiding the judicial search for the sometimes elusive scrivener's intent. Where the language used, considered in its entirety, discloses no purpose of limiting the general words used, the rule of *ejusdem generis* may not be invoked to defeat or limit the purpose of the enactment. *People v O'Hara,* 278 Mich 281 [270 NW 298 (1936)], and *Utica State Savings Bank v Village of Oak Park,* 279 Mich 568 [273 NW 271 (1937)]" *In re Mosby,* 360 Mich 186, 192; 103 NW2d 462 (1960).[4]

Accord: *Gooch v United States,* 297 US 124; 56 S Ct 395; 80 L Ed 522 (1936) and *Helvering v Stockholms Enskilda Bank,* 293 US 84; 55 S Ct 50; 79 L Ed 211 (1934), two cases declining to apply a narrowing construction under *ejusdem generis* where the general words, following the specific words in a statute, were themselves followed by an exception.[5]

However, "[p]resuming, as we must, that the Supreme Court's most recent utterance controls the case at bar", *Michigan National Bank of Detroit v Holland-Dozier-Holland Sound Studios,* 73 Mich App 12, 16; 250 NW2d 532 (1976), we proceed to apply the law propounded in *Smith.* Given defendant's admission that he used the machete to

---

[4] For other Michigan cases to the same effect, *see McDade v People,* 29 Mich 50 (1874), *People v Gogak,* 205 Mich 260; 171 NW 428 (1919), *People v Powell,* 280 Mich 699; 274 NW 372 (1937), and *Utica State Savings Bank v Oak Park,* 279 Mich 568; 273 NW 271 (1937).

[5] The Legislature's express mention of an exception for hunting knives would seem to invoke another constructional rule, *expressio unius est exclusio alterius. See Stowers v Wolodzko,* 386 Mich 119, 133; 191 NW2d 355 (1971), *Alan v Wayne County,* 388 Mich 210, 253; 200 NW2d 628 (1972), *Valenti Homes, Inc v Sterling Heights,* 61 Mich App 537; 233 NW2d 72 (1975).

throw at trees, we strongly suspect the instrument was pointed and thus functional as a stabbing weapon. Hence, *Smith* would proscribe its possession in a vehicle. Accordingly, we hold that a machete, capable of inflicting stab wounds, is a "dangerous weapon" proscribed by MCLA 750.227; MSA 27.424. But this holding, of course, does not preclude defendant from demonstrating to the court below that the machete was in fact blunt-ended and thus useless as a stabbing weapon.

Defendant next contends that the prosecution presented insufficient evidence establishing that defendant "had used [the machete], or was carrying it for use, as a weapon of assault or defense". *Vaines, supra,* at 506. Although we are inclined to side with defendant on this issue, we are compelled to reject the contention based on the contrary suggestion in *Smith.* There the Court in comparing the intent requirement of MCLA 750.227 with that of "an earlier section in the same act *[i.e.,* 1931 PA 328, § 226]" observed:

"The greater difficulty in prosecuting crimes proscribed under MCLA 750.226 which does require proof of 'intent to use the [weapon] unlawfully' in order to support a conviction does not, of course, escape us. It appears, however, that the Legislature was cognizant of the fact that to hold that rifles are included within the proscription of MCLA 750.227 would be to subject most weekend hunters, for example, to potential *felony* prosecution under MCLA 750.227 notwithstanding their lack of intent to unlawfully use their hunting rifles." (Emphasis in original; footnotes omitted.) 393 Mich at 437–438.

The conclusion is thus ineluctable that the Court would affirm a conviction under MCLA 750.227

"notwithstanding [defendant's] * * * lack of intent to unlawfully *[e.g.,* assaultively] use" his machete. Though the wisdom of this construction be doubted, the literal mandate of *Smith* allows room for no other.

As a third issue, defendant assails the question posed by the trial prosecutor regarding war movies allegedly depicting the decapitation of prisoners. To be sure, the question smacked of the lurid and sensational, and should not have been asked. Still, no one would quibble with the proposition that machetes are capable of considerable mayhem.[6] Indeed, defendant ultimately admitted the machete's potential utility as a dangerous weapon. Under these circumstances, then, we view the prosecutor's question as a misguided, but not improper, area of examination.

Defendant next attacks the propriety of the trial court's instructions. The issue is without merit. Defendant has failed to show how the instructions, taken *in toto,* veer from the standard in *Smith.*

Defendant's final issue, raising a double jeopardy argument, is answered in *People v Morris,* 69 Mich App 545, 553; 245 NW2d 126 (1976).

Although we affirm defendant's conviction based on *Smith, supra,* we do so with trepidation. Our hope is that the Supreme Court will supplant *Smith* with a reaffirmation of *Vaines.* Until then, the hapless citizen, brazen enough to carry a steak knife on a weekend picnic, must continue to fear

---

[6] "It is unquestioned that the machete is used for both war and peace, it being described in the Century Dictionary as a 'heavy knife or cutlass, used among Spanish colonists and Spanish American countries, both as a tool and as a weapon' and by Webster as 'a large, heavy knife, resembling a broadsword, often two or three feet in length, used by the inhabitants of Spanish America as a hatchet to cut their way through thickets, and for various other purposes'." *Wiborg v United States,* 163 US 632, 636; 16 S Ct 1127, 1129; 41 L Ed 289, 291 (1896).

the zealous enforcement of a dubiously analyzed statute.

Affirmed.

P. R. Mahinske, J., concurred.

Bashara, J. *(dissenting).* I must respectfully dissent. MCLA 750.227; MSA 28.424 imposes strict liability for the carrying of certain types of specifically proscribed articles. *People v Smith,* 393 Mich 432; 225 NW2d 165 (1975), recognized that the statute did not include firearms of any sort in the phrase "other dangerous weapon". It was on that basis that the *Smith* Court excluded the carrying of an M-1 rifle.

The majority seeks to use the dicta in the *Smith* case to show that even the carrying of a steak knife would be illegal under the statute. However, assuming arguendo that the dicta cited by the majority were binding, a finding must be made that the instrument used was, indeed, a "stabbing weapon".

In the case at bar, the only use made of the machete by the defendant, in the eight months preceding his arrest, was to shorten trousers. Previously he had occasionally used it to chop tree limbs. Under such circumstances, I am inclined to be guided by the decision in *People v Vaines,* 310 Mich 500; 17 NW2d 729 (1945). That case speaks directly to the issue at hand as the law of the case, and not incidentally, as in *Smith, supra.* I would reiterate the majority opinion's quote from *Vaines:*

"We are convinced that the legislature intended the words 'other dangerous weapon', as used in section 227, to mean *any concealed article or instrument which the carrier used, or carried for the purpose of using, as a weapon for bodily assault or defense.* The legislature

certainly did not intend to include as a dangerous weapon the ordinary type of jackknife commonly carried by many people, unless there was evidence establishing that it was used, or was carried for the purpose of use, as a weapon." *Id,* at 506. (Emphasis added.)

I would, therefore, reverse and remand for a new trial. I would also suggest that the trial judge instruct the jury to the effect that unless the weapon used was specifically referred to in the statute, the jury must find that the defendant intended to use it as a weapon.