PEOPLE v BROWN

Docket No. 60508. Argued December 5, 1978 (Calendar No. 6).—Decided April 9, 1979.

Tommy J. Brown was convicted in Wayne Circuit Court, George T. Martin, J., of carrying a dangerous weapon in a motor vehicle. The defendant was arrested when police officers saw a machete in his car after stopping him for a traffic violation. There was no evidence that the defendant had any intention of using the machete as a weapon, and the prosecutor stated that he was not accused of carrying it for an unlawful purpose. The Court of Appeals, D. C. Riley, P.J., and Mahinske, J. (Bashara, J., dissenting), affirmed the conviction (Docket No. 28377). Defendant appeals. *Held:*

1. The statute under which the defendant was convicted prohibits carrying a "dagger, dirk, stiletto or other dangerous weapon", and the question is whether a machete is a "dangerous weapon" within the meaning of the statute. It is well settled that some instruments, such as stilettos and brass knuckles, are dangerous weapons per se, while other instruments are not dangerous weapons unless used in a manner intended to inflict serious injury or carried for such use. In a prosecution for carrying an instrument of the latter kind it is a question of fact for the court or jury whether the instrument was used or carried for use as a weapon of assault or defense.

2. Where a defendant is charged with carrying a "dangerous weapon" under the statute used here (MCL 750.227; MSA 28.424), *the burden is on the prosecution to prove that the* instrument carried by the defendant is a dangerous weapon per se, or that the instrument was used or intended for use as a weapon for bodily assault or defense.

3. The fact that a pointed instrument, such as a machete, has great potential as a dangerous weapon does not render it a dangerous weapon per se. Thus, in this case, mere proof that

REFERENCES FOR POINTS IN HEADNOTES

[1, 3] 79 Am Jur 2d, Weapons and Firearms §§ 1, 2, 12.
[2, 5] 79 Am Jur 2d, Weapons and Firearms § 2.
[4] 29 Am Jur 2d, Evidence §§ 125, 148.

the defendant knew that a machete could be used as a danger-ous weapon does not support a conviction.

Reversed and conviction vacated.

78 Mich App 439; 260 NW2d 125 (1977) reversed.

1. WEAPONS — DANGEROUS WEAPONS — STATUTES.

Some instruments, such as stilettos and brass knuckles, are "dangerous weapons" per se within the meaning of the statute prohibiting the carrying of dangerous weapons in a vehicle, while other instruments are not dangerous weapons unless used in a manner intended to inflict serious injury or carried for such use (MCL 750.227; MSA 28.424).

2. WEAPONS — DANGEROUS WEAPONS — STATUTES.

Daggers, dirks, stilettos, metallic knuckles, slungshots, pistols, and similar articles, designed for the purpose of bodily assault or defense, are generally recognized as dangerous weapons per se, whereas other articles or instruments become dangerous only when they are used or carried for use as weapons (MCL 750.227; MSA 28.424).

3. WEAPONS — DANGEROUS WEAPONS — STATUTES — STRICT LIABIL-ITY.

The statute prohibiting the carrying of a dangerous weapon in a vehicle does not impose strict liability for the carrying of all pointed instruments which could be used as stabbing weapons (MCL 750.227; MSA 28.424).

4. WEAPONS — DANGEROUS WEAPONS — STATUTES — BURDEN OF PROOF.

The burden is on the prosecution in a charge of carrying a dangerous weapon in a vehicle to prove that the instrument carried by the defendant is a dangerous instrument per se or that the instrument was used, or intended for use, as a weapon for bodily assault or defense (MCL 750.227; MSA 28.424).

5. WEAPONS — DANGEROUS WEAPONS — MACHETE.

The fact that a pointed instrument, such as a machete, has great potential as a dangerous weapon does not render it a dangerous weapon per se (MCL 750.227; MSA 28.424).

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Prin-

cipal Attorney, Appeals, and *Andrea L. Solak,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Domnick J. Sorise* and *Janet Tooley)* for defendant.

FITZGERALD, J. Defendant was convicted by a jury of carrying a dangerous weapon, namely, a machete, in a motor vehicle contrary to MCL 750.227; MSA 28.424. The sole issue on appeal is whether MCL 750.227; MSA 28.424 proscribes the carrying of all pointed tools, utensils, or objects. We answer this question in the negative and vacate defendant's conviction.

I

On August 10, 1975, defendant was stopped by two police officers for running a red light in Dearborn Heights. According to the testimony of the police officers, defendant got out of his car after he was stopped and began talking with one of the officers. The other police officer walked over to defendant's car to look inside, and saw about 8 to 10 inches of a rusty, black-handled machete protruding from under the driver's seat. The machete was confiscated, and defendant was arrested for having it in his car.

Defendant, who was 18 years of age at the time of the trial, testified that he purchased the machete for $1.98 at a department store when he was 14 years old and that he had used it to throw at trees in his backyard for sport and to chop tree limbs. Defendant testified that on one occasion he placed the machete in the trunk of his car to take it to a friend's farm to cut up trees. The machete remained in the trunk of defendant's car for about eight months until one day, when defendant and

some friends were at the beach, the machete was used to shorten a pair of trousers for swimming. Defendant explained:

"*A. [The Defendant]:* I went to the beach one day, me and some other guys, and one of my friends didn't have any short pants, so we took the machete and cut off the long pants, to shorts, more or less; ripped them and cut them, because this machete wasn't so sharp.

"*Q. [Defense Attorney]:* After that was done, where did you put the machete?

"*A. [The Defendant]:* Just underneath my front seat."

It appears the machete remained under the front seat of defendant's car until its discovery by the police on the day of defendant's arrest.

The police officers who arrested defendant both testified at trial that upon being pulled over, and subsequently arrested, defendant exhibited no hostility towards them. Moreover, the record is totally barren of evidence which would indicate that defendant had any intention of using the machete as a weapon. In fact, in his opening statement the prosecutor told the jury:

"The people in this matter have accused Mr. Brown of carrying a machete, a dangerous weapon, in a motor vehicle. I caution you, we are not accusing him of carrying this machete for any unlawful purpose. Only the fact that he was carrying it in a motor vehicle."

The gist of the prosecutor's case was that a machete could be used as a dangerous weapon and that defendant knew that it could be used as such.[1]

---

[1] In response to the prosecutor's questioning as to whether defendant had seen in war movies Filipinos "lob *[sic]* off Japanese heads with a machete", defendant did admit that a machete could be used as a dangerous weapon.

On December 5, 1975, in his second trial[2] for carrying a dangerous weapon in a motor vehicle, defendant was convicted by a jury as charged. The Court of Appeals, in a split decision, affirmed defendant's conviction "with trepidation"[3] on the basis of *People v Smith,* 393 Mich 432; 225 NW2d 165 (1975). 78 Mich App 439; 260 NW2d 125 (1977). On May 2, 1978, we granted plaintiff's application for leave to appeal in order to clarify the scope of MCL 750.227; MSA 28.424. 402 Mich 929 (1978).

## II

The statute under which defendant was convicted reads, in pertinent part, as follows:

"Any person who shall carry a dagger, dirk, stiletto or other dangerous weapon except hunting knives adapted and carried as such, * * * whether concealed or otherwise in any vehicle operated or occupied by him * * * shall be guilty of a felony, punishable by imprisonment in the state prison for not more than 5 years, or by fine of not more than 2,500 dollars." MCL 750.227; MSA 28.424.

The question before this Court is whether the machete found in defendant's car was a "dangerous weapon" within the meaning of MCL 750.227; MSA 28.424. It is well settled that some instruments such as stilettos and brass knuckles are

---

[2] In his first trial on October 31, 1975, the jury was unable to reach a verdict.

[3] "Although we affirm defendant's conviction based on *Smith, supra,* we do so with trepidation. Our hope is that the Supreme Court will supplant *Smith* with a reaffirmation of *[People v Vaines,* 310 Mich 500; 17 NW2d 729 (1945)]. Until then, the hapless citizen, brazen enough to carry a steak knife on a weekend picnic, must continue to fear the zealous enforcement of a dubiously analyzed statute." 78 Mich App 439, 449-450.

dangerous weapons per se, while other instruments are not dangerous weapons unless used in a manner intended to inflict serious injury or carried for such use. In *People v Vaines,* 310 Mich 500, 504-506; 17 NW2d 729 (1945), this Court stated the rule as follows:

"It is manifest that there are many articles or instruments, other than daggers, dirks and stilettos, which might properly come within the scope of the term 'dangerous weapon' if they were used or carried for use as weapons. For example, pocket knives, razors, hammers, hatchets, wrenches, cutting tools, and other articles which are manufactured and generally used for peaceful and proper purposes, would fall within the category of dangerous weapons if used for or carried for the purpose of assault or defense. Whether or not such articles are dangerous weapons, within the meaning of that term as used in section 227, would depend upon the use which the carrier made of them. As said in *People v Gogak,* 205 Mich 260, 265 [171 NW 428 (1919)]: 'There are knives and knives, some dangerous and offensive and some not.' In interpreting the words 'other dangerous weapon,' as used in section 82 of the penal code relating to assault, Mr. Justice WIEST said in the case of *People v Goolsby,* 284 Mich 375, 378 [279 NW 867 (1938)]:

" 'Some weapons carry their dangerous character because so designed and are, when employed, *per se,* deadly, while other instrumentalities are not dangerous weapons unless turned to such purpose. The test as to the latter is whether the instrumentality was used as a weapon and, when so employed in an assault, dangerous. The character of a dangerous weapon attaches by adoption when the instrumentality is applied to use against another in furtherance of an assault. When the purpose is evidenced by act, and the instrumentality is adapted to accomplishment of the assault and capable of inflicting serious injury, then it is, when so employed, a dangerous weapon.'

"Daggers, dirks, stilettos, metallic knuckles, slung-shots, pistols, and similar articles, designed for the

purpose of bodily assault or defense, are generally recognized as dangerous weapons *per se.* Other articles and instruments become dangerous weapons only when they are used or carried for use as weapons. Therefore, in a prosecution under section 227 it becomes a question of fact for court or jury determination as to whether or not such articles or instruments are used or carried for the purpose of use as weapons of assault or defense."

In the instant case, a majority of the Court of Appeals found that the principles set forth in *Vaines* were rejected *sub silentio* by *People v Smith, supra.* Accordingly, the Court of Appeals, with admitted reluctance, affirmed defendant's conviction notwithstanding the lack of evidence which would indicate that defendant used the machete as a weapon or had any intention to use the machete as a weapon.

In *People v Smith,* which involved a prosecution for possession of a M-1 rifle in a motor vehicle, this Court employed the rule of *ejusdem generis* to interpret the words "other dangerous weapon" in MCL 750.227; MSA 28.424:

"In construing statutes in an effort to ascertain and give effect to the legislative interest, courts are guided by a rule of construction known as 'ejusdem generis'.

"This is a rule whereby in a statute in which general words follow a designation of particular subjects, the meaning of the general words will ordinarily be presumed to be and construed as restricted by the particular designation and as including only things of the same kind, class, character or nature as those specifically enumerated. See 73 Am Jur 2d, Statutes, § 214, pp 407-408.

"Thus here the phrase 'or other dangerous weapon except hunting knives adapted and carried as such' following those specified types of stabbing weapons, under the rule would be limited to stabbing weapons.

As to that part of the statute we see no intent to include firearms of any sort in the phrase 'other dangerous weapon.'" 393 Mich 432, 436.

We believe that in the case at bar, reliance upon *Smith* has been misplaced. In *Smith,* this Court did not find that an M-1 rifle is not a dangerous weapon per se; we merely held that under the *ejusdem generis* rule of statutory construction, MCL 750.227; MSA 28.424 does not apply to an M-1 rifle. It appears that the source of confusion, which led a majority of the Court of Appeals to hold that MCL 750.227; MSA 28.424 imposes strict liability for the carrying of all pointed instruments which could be utilized as stabbing weapons, has its origin in the following dicta of *Smith:*

"The greater difficulty in prosecuting crimes proscribed under MCL 750.226 which does require proof of 'intent to use the [weapon] unlawfully' in order to support a conviction does not, of course, escape us. It appears, however, that the Legislature was cognizant of the fact that to hold that rifles are included within the proscription of MCL 750.227 would be to subject most weekend hunters, for example, to potential *felony* prosecution under MCL 750.227 notwithstanding their lack of intent to unlawfully use their hunting rifles." 393 Mich 432, 437-438.

Accordingly, we today reaffirm the principles set forth in *People v Vaines* and hold that where a defendant is charged with carrying a "dangerous weapon" contrary to MCL 750.227; MSA 28.424, the burden is on the prosecution to prove that the instrument carried by the defendant is a dangerous weapon per se or that the instrument was used, or intended for use, as a weapon for bodily assault or defense. The fact that a pointed instrument, such as a machete, has great potential as a

dangerous weapon does not render it a dangerous weapon per se. Thus, in the instant case, mere proof that defendant knew that a machete could be used as a dangerous weapon does not support a conviction under MCL 750.227; MSA 28.424.

We reverse the Court of Appeals and vacate defendant's conviction.

COLEMAN, C.J., and KAVANAGH, WILLIAMS, LEVIN, RYAN, and BLAIR MOODY, JR., JJ., concurred with FITZGERALD, J.