KELLY, J.
(concurring in part and dissenting in part). I concur in the majority’s decision to reverse the judgment of the Court of Appeals and remand this case to the Court of Claims. I likewise agree with the majority’s conclusion that, by amending the State Employees’ Retirement Act (SERA)[1] with 2011 PA 264, the Legislature did not infringe the Civil Service Commission’s authority to “fix rates of compensation” under Const 1963, art 11, § 5 because the ratifiers of the 1963 Constitution understood this phrase as authorizing the commission to establish job-specific salaries and pay schedules, not pensions or other fringe benefits. However, I respectfully dissent from the ma *336 jority’s decision to uphold 2011 PA 264 on the basis of the commission’s continued acquiescence in SERA. Rather than “assuming” for purposes of this case that employees’ pensions are “conditions of employment” within the meaning of Article 11, § 5, as the majority does, I would address that very issue as necessary to the question on which this Court specifically granted leave.[2] Because pensions are not “conditions of employment” within the meaning of Article 11, § 5, I would hold that SERA and the specific provisions challenged therein—namely, MCL 38.35a, MCL 38.50a, and MCL 38. le—are not conditions of employment and therefore do not implicate the commission’s authority.
In 1943, the Legislature enacted SERA, establishing retirement benefits for state employees and conferring on the commission various powers and duties in implementing the system of retirement benefits.[3] In the 72 years that SERA has been in existence, the Legislature has often amended it to affect state employee pensions, and 2011 PA 264 is no exception.[4] Specifically, under *337 MCL 38.50a(l) and (2), members currently enrolled in the state pension plan can elect to remain in that plan, but only by contributing “an amount equal to 4% of his or her compensation” until termination or until reaching his or her attainment date, if the latter was designated by the employee.[5] If an existing member in the state pension plan chooses not to make those 4% contributions, that member makes the irrevocable election to retain his or her existing accumulated contributions to the pension plan but, going forward, will receive credit for future service and compensation only through the defined contribution plan.[6]
In granting leave to appeal, we specifically asked the parties whether 2011 PA 264 implicates the commission’s authority under Article 11, § 5, which, in part, expressly authorizes the commission to “regulate all conditions of employment in the classified service.” It is beyond dispute that the challenged provisions of 2011 PA 264 concern amendments to the state employee pension system. The issue confronting this Court is whether these amendments alter a “condition of employment” within the meaning of Article 11, § 5 and, therefore, invade the commission’s constitutional au *338 thority. Rather than avoiding this constitutional issue, I would squarely address this question and, in doing so, would hold that these provisions do not implicate the commission’s authority under Article 11, § 5 because a pension, by definition, is not a condition of employment but rather an accrual of future financial benefits.
The text of Article 11, § 5 suggests that the phrase “conditions of employment” is not without restriction. Indeed, the commission’s general authority to “regulate all conditions of employment” is placed at the end of a list of specifically delineated powers: to “classify all positions in the classified service according to their respective duties and responsibilities,” to “approve or disapprove disbursements for all personal services,” to “determine by competitive examination and performance exclusively on the basis of merit, efficiency and fitness the qualifications of all candidates for positions in the classified service,” and to “make rules and regulations covering all personnel transactions.”
This Court has explained that the commission has the authority “to regulate employment-related activity involving internal matters such as job specifications, compensation, grievance procedures, discipline, collective bargaining and job performance,” but not activity that is not related to employment.[7] If “conditions of employment” were interpreted, as plaintiffs and the Court of Appeals contend, as a broad catchall intended to prevent the Legislature from regulating any and all terms of employment involving classified state employees, it would violate the doctrine of ejusdem generis, under which general terms are restricted to include *339 only items that are “of the same kind, class, character, or nature as those specifically enumerated.”[8]
Instead, because the specific powers articulated in Article 11, § 5 are limited to the commission’s authority over internal matters such as professional qualifications and expectations, compensation, job performance, and hiring and firing decisions, only a narrower concept of “conditions of employment” delineates the limited category of issues within the commission’s exclusive control.[9] Notably absent from those categories is the authority to regulate pensions or retirement benefits. Furthermore, if the phrase “conditions of employment” were given a broader meaning, it would necessarily include those powers defined in specific terms, rendering that language superfluous.
The history behind the grant of authority in Article 11, § 5 is also instructive. Clearly, the voters intended to provide the commission with the authority to “regulate all conditions of employment for employees in the *340 classified service” when they approved the amendment of Const 1908, art 6, § 22 in 1940. By retaining this very same language in the 1963 Constitution, the ratifiers of Article 11, § 5 expressed their intent that the commission continue to have such authority.[10] And because, by that point, SERA had been in effect for 20 years, the Legislature had amended it several times in the interim, and many of those amendments specifically affected pensions, the Legislature plainly did not regard the ratification of Article 6, § 22 as prohibiting its authority to enact and amend SERA.[11] Still, had the drafters of the 1963 Constitution believed SERA to be an unconstitutional usurpation of the commission’s authority, they easily could have clarified that by conferring additional powers on the commission pursuant to Article 11, § 5, or by limiting the Legislature’s powers under Article 4.[12]
*341 Furthermore, Article 11, § 5 does not contemplate the commission’s authority to regulate “conditions of employment” in a vacuum. For instance, the convention comment to Article 11, § 5 indicates that in connection with the proposed 1963 Constitution, “[o]f special interest to civil service personnel is the provision in [Article 9, § 24], . . . which specifies that pension plans and retirement systems of the state shall be contractual obligations ‘which shall not be diminished or impaired.’ ”[13] Indeed, this Court recognized that Article 9, § 24 specifically prohibits legislative impairment of “accrued financial benefits,” though the Legislature “may properly attach new conditions for earning financial benefits which have not yet accrued.”[14] Similarly, by adopting Article 9, § 24, the ratifiers conveyed their intent that it would be the employer itself—and not the commission—who could prospectively change pension benefits.[15]
In examining 2011 PA 264, it is important to note that MCL 38.35a, MCL 38.50a, and MCL 38.le do nothing to implicate Article 9, § 24 because they do not impair or diminish pension members’ already accrued pension benefits; rather, they only affect the accrual of future pension benefits. Moreover, because pension proceeds are payable to the member upon his or her completion of service, calculation of those benefits does not impose conditions of employment, but creates benefits following employment.[16] Clearly, then, that the *342 Legislature offered pension members the opportunity to remain in the defined benefit pension plan (subject to the 4% contribution requirement) demonstrates that the Legislature did not regulate a condition of employment but merely provided members the additional benefit option of membership in the defined contribution plan, which they were free to accept or decline. That 2011 PA 264 presents members with a retirement allowance election makes clear that continued employment is not conditioned on paying the 4% contribution.[17] In other words, because enrolling in the now-contributory defined benefit pension plan does not alter a pension member’s existing employment circumstances but rather affects a benefit subsequent to employment, the challenged provisions of 2011 PA 264 do not attempt to regulate a condition of employment and, therefore, do not invade the commission’s sphere of authority under Article 11, § 5.[18]
*343 As the majority recognizes, the commission’s regulatory authority under Article 11, § 5 does not empower the commission to enact, amend, or revise the laws of this state because it is not a legislative body.[19] It necessarily follows, then, that the commission lacks the authority to enact, prevent, or otherwise dictate legislation as it relates to pensions. Even the commission implicitly acknowledges these limitations because it has never attempted to enact a separate retirement system,[20] nor has it adopted any separate rules regulating pensions.[21] To the contrary, the commission acknowledges only an advisory role in the administration of SERA.[22]1 therefore disagree with the majority to the extent that it assumes that the terms of the *344 pension plan are conditions of employment. Rather, because the terms of pension plans are not conditions of employment, they do not implicate Article 11, § 5 in the first instance. Accordingly, I would conclude that 2011 PA 264 does not intrude into the commission’s sphere of authority.
Consistent with this analysis, I concur in the majority’s decision to reverse the decision of the Court of Appeals and remand this case to the Court of Claims. Nevertheless, I respectfully dissent from the majority’s assumption that a pension is a condition of employment and instead would reach the question this Court posed—and the parties briefed—and uphold 2011 PA 264 because it does not regulate a “condition of employment” within the meaning of Article 11, § 5.

 MCL 38.1 et seq.

 Mich Coalition of State Employee Unions v Michigan, 495 Mich 921 (2014).

 1943 PA 240.

 See, e.g., 1984 PA 3 (providing pension incentives to eligible state employees in exchange for early retirement); 1987 PA 57 (changing the formula for calculating future pensions by using a three-year average instead of the former five-year average); 1991 PA 62 (affecting the computation of members’ retirement allowance depending on the age of retirement and providing members the right to elect a specified retirement option); 1992 PA 64 (providing pension incentives for early retirement); 1993 PA 195 (permitting members to increase their pensions by purchasing service credit); 1996 PA 487 (closing the pension fund for newly hired state employees, creating a new contribution plan for those employees, and providing that all employees hired on or after March 31, 1997, are “qualified participants” in a defined contribution plan in which the state contributes an amount equal to 4% of the participant’s compensation and will match up to an additional 3% of the participant’s contributions, and eliminating any fixed retirement allow *337 ance provided by the state); 1998 PA 205 (permitting members to increase their pensions by purchasing service credit); 2002 PA 93 (providing for nonduty disability retirement benefits); 2002 PA 743 (providing pension incentives for early retirement); and 2010 PA 185 (providing pension incentives for individuals retiring between November 1, 2010, and January 1, 2011).

 MCL 38.35a.

 MCL 38.50a(4). 2011 PA 264 also amended MCL 38.le to change the calculation for overtime earnings. More specifically, a member’s “final average compensation” is no longer computed using the three highest-paid consecutive years for overtime and dividing that total by three; rather, overtime earnings are calculated using “the average of annual includable overtime compensation paid to the member during” a specified consecutive six years of credited service.

 Council No 11, AFSCME v Civil Serv Comm, 408 Mich 385, 406-407; 292 NW2d 442 (1980).

 Huggett v Dep’t of Natural Resources, 464 Mich 711, 718-719; 629 NW2d 916 (2001). See also People v Brown, 406 Mich 215, 221; 277 NW2d 155 (1979).

 Justice Bernstein suggests that a broader interpretation of the phrase “conditions of employment” is necessary to encompass the commission’s authority to regulate “disciplinary procedures” as well as “collective bargaining.” Post at 355. Far from being “disparate concepts,” post at 355, disciplinary procedures and collective bargaining are rather congruent; indeed, both involve internal employment-related policies and, therefore, are entirely separate from the notion of pensions. Similarly, Justice BERNSTEIN fails to explain how the commission’s purported authority to regulate pensions derives from its authority to regulate certain off-duty political activity. If anything, that this Court has understood the commission’s sphere of authority to “delimito its rule-making power and confined its jurisdiction over the political activity of classified personnel to on-the-job behavior related to job performance,” Council No 11, 408 Mich at 408 (emphasis added), only reinforces a more limited interpretation of the powers identified under Article 11, § 5.

 While Justice BERNSTEIN appears to agree with this proposition, he nevertheless concludes that this “supposed intention shines no light on whether the commission can properly challenge legislative incursion into its sphere of authority.” Post at 355. However, the ability to challenge an incursion into the commission’s sphere of authority is inconsequential where, like here, that authority has not been implicated. Furthermore, to the extent that Justice Bernstein surmises that the 1963 Constitution “did not change the underlying presumption that the commission maintained the constitutional authority to regulate pensions,” post at 355 (emphasis added), that is all that it is: a presumption. Justice Bernstein identifies no constitutional language that plainly or by fair implication supports the conclusion that the commission is vested with the authority to regulate pensions.

 Justice Bernstein takes the position that the commission’s failure to challenge any portion of SERA, between its 1943 enactment and the ratification of the 1963 Constitution merely indicates that the commission “did not believe that the Legislature had yet overstepped its bounds.” Post at 356. But it is just as likely, if not more probable, that the commission did not challenge SERA and the myriad amendments relating to pensions because the commission understood that it was not within its scope of authority to do so.

 See Council No 11, 408 Mich at 404.

 2 Official Record, Constitutional Convention 1961, p 3045 (emphasis added).

 Advisory Opinion re Constitutionality of 1972 PA 258, 389 Mich 659, 663; 209 NW2d 200 (1973).

 Id., citing 1 Official Record, Constitutional Convention 1961, pp 770-771.

 Justice BERNSTEIN posits that nothing in the Constitution suggests that a condition of employment must occur during employment; instead, he insists that the phrase encompasses an employee’s “ability to plan *342 ahead for expected future outcomes!.]” Post at 356. As support for this assertion, Justice Bernstein explains that while grievance procedures likely do not occur as part of an employee’s day-to-day employment routine, the commission nevertheless has plenary authority to regulate such matters, thus providing employees with expected future procedures. Regardless of how routine grievance procedures might be, regulating grievance procedures is essential to an employee’s current employment conditions, even if that employee does not require the use of those procedures during his or her period of employment. This stands in stark contrast to a pension, which, by definition, relates to a time after employment.

 Contrary to Justice Bernstein’s understanding of my analysis, I agree that not all conditions of employment require an employee “to behave a certain way in order to maintain employment.” Post at 357. Instead, a condition of employment encompasses the policies and procedures existing during the pendency of employment and could be something as commonplace as which entrance an employee should use when entering the building after regular office hours or how long employees are entitled to take breaks.

 Curiously, the majority opinion appears to suggest that because the commission was created by the Constitution, the issue of pensions is *343 equally constitutional in nature. See ante at 332. However, as evidenced by the Legislature’s enactment of SERA (legislation “creat[ing]” a “state employees’ retirement system,” MCL 38.2(1)) and the commission’s promulgation of Civ Serv R 5-13 (an administrative rule authorizing retirement benefits for eligible classified employees “as provided by law”), the right to pensions is a creature of statute, not the Constitution. Therefore, the constitutional nature of the commission itself does not somehow transform a benefit of employment into a constitutional right.

 The commission is an administrative agency “existing” under the Constitution (as opposed to established by the Legislature). Viculin v Dep’t of Civil Serv, 386 Mich 375, 385 & n 11; 192 NW2d 449 (1971). “As are all such administrative agencies,” the commission, like the State Board of Education, “is part of and within the executive branch[.]” Straus v Governor, 459 Mich 526, 535, 537; 592 NW2d 53 (1999) (citations and quotation marks omitted).

 Indeed, as previously explained, the legislative enactment of SERA was a response to the commission’s encouragement of the Legislature to establish a retirement system for classified state employees.

 As previously indicated, Civ Serv R 5-13 conspicuously authorizes retirement benefits for eligible classified employees “as provided by law.”

 See Civ Serv R 2-17.1 (requiring the state personnel director to “cooperate with the state employees’ retirement board in maintaining a comprehensive retirement system for classified employees”). Substantively, this rule is indistinguishable from its 1963 counterpart, Civ Serv R 31.1.