*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

SHAWN JACOB ORT,

        Defendant-Appellant.

UNPUBLISHED
June 25, 2020

No. 347284
Hillsdale Circuit Court
LC No. 18-424331-FH

Before: TUKEL, P.J., and SERVITTO and BECKERING, JJ.

PER CURIAM.

Defendant, Shawn Jacob Ort, appeals as of right his jury trial conviction of carrying a concealed weapon (CCW), MCL 750.227. The trial court sentenced defendant, as a fourth-offense habitual offender, MCL 769.12, to 5 to 20 years in prison. We affirm defendant's conviction and sentence, but we remand this case to the trial court to vacate the $60 DNA fee assessed against defendant.

During a traffic stop of a vehicle driven by defendant, Sergeant Dustin Sims of the Hillsdale Police Department noticed the front passenger making furtive movements. Sergeant Sims approached the vehicle and recognized defendant, who was driving, and the front passenger, Derek Barnett, as he previously "had multiple contacts" with them "during the course of [his] duties." Sergeant Sims had information that Barnett was known to carry a gun. Defendant, Barnett, and a third passenger were removed from the vehicle. When Sergeant Sims asked defendant if there was "anything illegal" in the car, defendant replied that there was "possibly a knife."

Sergeant Sims began a search of the vehicle, and another officer, Deputy Merillat, arrived on scene and began searching the driver's compartment. Deputy Merillat found a knife underneath the seat and, after being told about it, Sergeant Sims located an unsheathed knife under the driver's seat with the handle pointing toward the front of the vehicle. He also found a flashlight and a knife sheath. Sergeant Sims described the knife as a "Rambo knife" and a "survivalist knife." It was approximately 14 inches from handle to blade tip, had a "very dull" blade, and would "not be a very good cutting weapon." He opined that the knife's only utility would be as a stabbing instrument. He also opined that the knife was "very accessible to grab so almost in a position

where [defendant] would have just had to reach down and he would have been able to use it as a stabbing instrument." Defendant admitted that the knife was his. He denied carrying it for the purpose of self-defense or use against other people; defendant testified that he kept the knife to guard against raccoons that infested the barn next to where he lived.

Defendant first argues that there was insufficient evidence to establish that he carried the knife as a dangerous weapon. We disagree.

A challenge to the sufficiency of the evidence is reviewed de novo. *People v Lueth*, 253 Mich App 670, 680; 660 NW2d 322 (2002). To sustain a conviction, due process requires that there be sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt. *People v Wolfe*, 440 Mich 508, 513-514; 489 NW2d 748 (1992). We review challenges to the sufficiency of the evidence by viewing the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *People v Bennett*, 290 Mich App 465, 471-472; 802 NW2d 627 (2010). In applying this standard, we "must draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Cameron*, 291 Mich App 599, 613; 806 NW2d 371 (2011) (quotation marks and citation omitted). Circumstantial evidence and any reasonable inferences flowing from that evidence can prove the elements of a crime. *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

MCL 750.227 covers the offense of CCW and states in relevant part:

(1) A person shall not carry a dagger, dirk, stiletto, a double-edged nonfolding stabbing instrument of any length, or any other dangerous weapon, except a hunting knife adapted and carried as such, concealed on or about his or her person, or whether concealed or otherwise in any vehicle operated or occupied by the person, except in his or her dwelling house, place of business or on other land possessed by the person.

The prosecution asserted that the knife found in defendant's car was "any other dangerous weapon." That is, the prosecution did not claim that the knife was a "dagger, dirk, stiletto, [or] a double-edged nonfolding stabbing instrument" specifically prohibited by MCL 750.227(1), i.e., it was not a dangerous weapon per se. In order to prove that the knife was a dangerous weapon, "the burden [wa]s on the prosecution to prove that the instrument carried by the defendant [wa]s a dangerous weapon per se or that the instrument was used, or intended for use, as a weapon for bodily assault or defense." *People v Brown*, 406 Mich 215, 222; 277 NW2d 155 (1979). Stated differently, "to convict an individual for violating MCL 750.227(1) for carrying an instrument that is not a dangerous weapon per se, *the evidence must show that a defendant* used the instrument, or *was carrying the instrument for the purpose of use, as a weapon*." *People v Triplett*, 499 Mich 52, 56; 878 NW2d 811 (2016) (emphasis added).

The evidence presented at trial was that the knife was found unsheathed with the handle facing forward. Sergeant Sims opined that the knife's only real utility would be as a stabbing instrument and the evidence indicated that it was easily accessible to defendant. Although defendant stated that his intent in carrying the knife was not for bodily assault or defense, but to

defend himself against raccoons, and that he did not know that it was in the car, the jury apparently found that this explanation was not credible. In viewing the circumstantial evidence and any reasonable inferences flowing from that evidence, *Nowack*, 462 Mich at 400, and drawing all reasonable inferences in support of the jury verdict, *Cameron*, 291 Mich App at 613, a rational trier of fact could find that defendant carried the knife for the purpose of use as a weapon, *Triplett*, 499 Mich at 56. Thus, we conclude that there was sufficient evidence that defendant carried a concealed dangerous weapon in violation of MCL 750.227(1).

Defendant next argues that he was denied the effective assistance of counsel because counsel did not investigate or call Deputy Merillat as a witness. Again, we disagree.

Generally, a claim of ineffective assistance of counsel is a mixed question of fact and constitutional law. *People v Leblanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). We review the trial court's findings of fact for clear error, and we review questions of constitutional law de novo. *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). In order to find merit in defendant's claim of ineffective assistance of counsel, he must prove: (1) that the attorney made an error, i.e., that counsel's performance was deficient, and (2) that the error was prejudicial to defendant. *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Pickens*, 446 Mich 298, 311, 314; 521 NW2d 797 (1994). That is, first, defendant must show that trial counsel's performance fell below an objective standard of reasonableness. *People v Russell*, 297 Mich App 707, 715-716; 825 NW2d 623 (2012). We must analyze this issue with a strong presumption that trial counsel's conduct fell within a wide range of reasonable professional assistance, and the test requires that the defendant overcome the presumption that the challenged action or inaction might be considered sound trial strategy. *Leblanc*, 465 Mich at 578. Decisions about whether to call or question a witness are presumed to be matters of trial strategy. *Russell*, 297 Mich App at 716. Failing to call a witness only rises to the level of ineffective assistance of counsel if it deprives the defendant of a substantial defense. *Id*. A defendant must also show that there is a reasonable probability that but for trial counsel's deficient performance, a different result would have occurred. *Id*. at 715-716.

Counsel's failure to call Deputy Merillat did not deprive defendant of a substantial defense. On cross-examination, counsel had Sergeant Sims confirm that Deputy Merillat was the first person to find the knife, and that he could not recall if he included that fact in his report. Further, counsel elicited that Deputy Merillat had told Sergeant Sims that the knife was out of the sheath, but he did not know for sure that it was, in fact, unsheathed at the time defendant was pulled over because he was not the first to find the knife. Sergeant Sims did not include that fact in his report. Thus, Deputy Merillat's absence actually allowed defendant to cast doubt on Sergeant Sim's testimony and credibility. Defendant was able to argue and attempt to prove that Deputy Merillat did not find the knife in the same position that Sergeant Sims found it. Defense counsel could have reasonably refrained from calling Deputy Merillat as a witness since there was a possibility she could have bolstered Sergeant Sims's testimony, and it served defendant's defense to allow the jury to question the position in which the knife was initially found. As a result, we conclude that defendant has not shown that counsel's performance was deficient or that had Deputy Merillat been called as a witness, a different result would have occurred.

Defendant next argues that his right to a fair trial was violated by the admission of Sergeant's Sims's testimony that he had previously had multiple contacts with defendant.

-3-

Defendant did not object at the time of admission and therefore, this issue is not preserved for appeal. *People v Cain*, 238 Mich App 95, 115; 605 NW2d 28 (1999). Accordingly, we review for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). To avoid forfeiture under the plain error rule, a defendant must establish that (1) error occurred, (2) the error was clear or obvious, and (3) the error affected the defendant's substantial rights. *Id*. The third element generally requires a showing that the error affected the outcome of the lower court proceedings. *Id*. Reversal is warranted only when the plain error "resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings' independent of the defendant's innocence." *Id*. (quotation marks and citation omitted). We find no plain error.

MRE 404(b)(1) states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, *identity*, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case. (Emphasis added).

In this case, Sergeant Sims testified that upon approaching the vehicle he realized that he recognized defendant from previous contacts during the performance of his duties. He did not testify that the "multiple contacts" equated to any prior bad act on defendant's part. That being said, the prior contacts could easily be deemed to indicate prior bad acts. Although Sergeant Sims's statement was intended to serve the purpose of identity—not to imply that defendant was guilty of the crime charged simply because he had previously had other contacts with Sergeant Sims—it could be viewed as an improper admission of prior bad acts testimony.

However, even if the admission of the statement was improper, defendant has not demonstrated that absent its admission, a different result would likely have occurred. Defendant admitted that the knife found in the easily accessible position under the driver's seat was his. The essential issue at trial was the purpose for which the knife was carried (located in the vehicle). A statement that defendant had prior contacts with police, without more, does not affect this issue.

Defendant also argues that trial counsel provided ineffective assistance by failing to object to the testimony. While counsel should have objected, to succeed on a claim of ineffective assistance of counsel, defendant must also show that there is a reasonable probability that but for trial counsel's deficient performance, a different result would have occurred. *Russell*, 297 Mich App at 715-716. Given the evidence presented in this matter, it is not reasonably probable that had the challenged statement been omitted, the jury would have found differently.

Defendant next argues that he is entitled to resentencing because the prosecution allegedly did not serve notice of its intent to seek a fourth-offense habitual offender sentencing enhancement within the timeframe allotted by the controlling statute. Interpretation of statutes is a question of

law that we review de novo.  *People v Houston*, 473 Mich 399, 403; 702 NW2d 530 (2005).  We find no error.

MCL 769.13 governs notice of habitual offender enhancements and it states in relevant part:

> (1) In a criminal action, the prosecuting attorney may seek to enhance the sentence of the defendant as provided under section 10, 11, or 12 of this chapter, by filing a written notice of his or her intent to do so within 21 days after the defendant's arraignment on the information charging the underlying offense or, if arraignment is waived, within 21 days after the filing of the information charging the underlying offense.

> (2) A notice of intent to seek an enhanced sentence filed under subsection (1) shall list the prior conviction or convictions that will or may be relied upon for purposes of sentence enhancement.  The notice shall be filed with the court and served upon the defendant or his or her attorney within the time provided in subsection (1).  The notice may be personally served upon the defendant or his or her attorney at the arraignment on the information charging the underlying offense, or may be served in the manner provided by law or court rule for service of written pleadings.  The prosecuting attorney shall file a written proof of service with the clerk of the court.  [Emphasis added.]

Pursuant to MCL 769.13(1), the prosecution had to serve notice of its intent to seek the habitual offender enhancement within 21 days of the arraignment.  The lower court record indicates that the prosecution filed a habitual offender notice with the trial court on August 9, 2018, which was the same day that it filed the information.  Attached to appellee's brief on appeal is a proof of service indicating that a copy of the notice was placed in defense counsel's mailbox at the county courthouse on August 9, 2018.  At an August 13, 2018 hearing, the trial court stated, "Mr. Ort, you're here this morning for arraignment."  The transcript from the August 13, 2018 plea/arraignment hearing further indicates that the trial court confirmed with defendant and defense counsel that defendant was aware of the habitual offender sentencing enhancement and that counsel had discussed it with defendant.  Thus, defendant was on notice of the habitual offender enhancement within the required timeframe.  Accordingly, we conclude that defendant is not entitled to resentencing on the basis of an untimely notice of sentencing enhancement.

Defendant next argues that he is entitled to resentencing because the trial court's upward departure from the sentencing guidelines was unreasonable and disproportionate.  We disagree.

Defendant did not raise this issue below or in his motion for remand filed with this Court, and thus, the issue is unpreserved.  *People v Anderson*, 322 Mich App 622, 634; 912 NW2d 607 (2018).  Accordingly, we review this issue for plain error affecting substantial rights.  *Carines*, 460 Mich at 763.

A sentence is reasonable "if it adheres to the principle of proportionality set forth in [*People v Milbourn*, 435 Mich 630; 461 NW2d 1 (1990)]."  *People v Lampe*, 327 Mich App 104, 126; 933 NW2d 314 (2019) (quotation marks and citation omitted).  Proportionality requires that "sentences

imposed by a trial court [] be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Id.* at 125 (quotation marks and citation omitted). A sentence outside of the guidelines range "may be imposed when the trial court determines that the recommended range under the guidelines is disproportionate, in either direction, to the seriousness of the crime." *Id.* at 126 (quotation marks and citation omitted). The trial court may consider the following factors in crafting a proportionate sentence:

> (1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation. [*Id.* (citation omitted).]

If a departure sentence is imposed, a trial court must explain why the departure "is more proportionate to the offense and the offender than a different sentence would have been." *Id.* at 126-127 (quotation marks and citation omitted).

Defendant's guidelines range was calculated at 7 to 46 months. The trial court departed upward from the guidelines range and sentenced defendant to 60 to 240 months. In doing so, the trial court went to great lengths to explain its departure, stating, "[A]s I go through these notes and this PSI, I note a number of reasons to depart." The trial court noted that even though Prior Record Variables took defendant's criminal history into consideration, it only accounted for four felonies. The trial court noted that defendant actually had 10 felony convictions, which was "two-and-a-half-times the number." It noted that defendant had a "repetitive nature of criminal activity," including "28 parole or probation violations," "six alcohol or drug-related convictions," "five assaultive adjudications or convictions," and the current conviction, which was his second weapons violation. The trial court considered that defendant had a "long-term substance abuse problem" and that defendant had "already completed six programs" for substance abuse that did not result in his rehabilitation. The trial court ultimately concluded that defendant needed discipline, reformation, education, and deterrence, and that society needed to be protected from him.

We conclude that the trial court considered appropriate factors in crafting a sentence that was outside of the guidelines range, and it justified its reasons for doing so. And, the departure was reasonable and proportionate given the circumstances cited. Therefore, we conclude that defendant has not demonstrated plain error affecting his substantial rights.

Defendant lastly argues that the trial court erred in assessing him a $60 DNA testing fee because his DNA was already on file. We agree.

MCL 28.176 governs the assessment of DNA fees and provides: "The court shall order each individual found responsible for or convicted of 1 or more crimes listed in subsection (1) to pay an assessment of $60.00. The assessment required under this subsection is in addition to any fine, costs, or other assessments imposed by the court." MCL 28.176(5). However, the statute also states: "[I]f at the time the individual is arrested, convicted of, or found responsible for the violation the investigating law enforcement agency or the department already has a sample from

the individual that meets the requirements of this act, the individual is not required to provide another sample or pay the assessment required under subsection (5)." MCL 28.176(3).

The evidence indicates that defendant's DNA was collected in November of 2002. The trial court even recognized that this might be the case at the plea/arraignment hearing when it stated, "You're also subject to DNA testing, but that has probably been done on a prior occasion." Because the evidence indicates that at the time defendant was convicted a sample of his DNA was already on file, he was not required to provide another sample or pay the $60 assessment fee. MCL 28.176(3).

Remanded to the trial court to vacate the $60 DNA assessment fee, but affirmed in all other respects. We do not retain jurisdiction.

/s/ Jonathan Tukel
/s/ Deborah A. Servitto
/s/ Jane M. Beckering