*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

MAURICE ROMERO FRAZIER,

Defendant-Appellant.

UNPUBLISHED
April 15, 2025
11:22 AM

No. 367947
Macomb Circuit Court
LC No. 2022-001999-FH

Before: MALDONADO, P.J., and CAMERON and YOUNG, JJ.

PER CURIAM.

Defendant, Maurice Frazier, appeals as of right from his jury trial convictions of first-degree home invasion, MCL 750.110a(2), and assault with intent to do great bodily harm less than murder (AWIGBH), MCL 750.84. On appeal, Frazier challenges his convictions, arguing that (1) there was insufficient evidence to sustain his convictions; (2) the trial court erroneously admitted other-acts evidence regarding his actions after the alleged incident; and (3) he was denied the effective assistance of counsel because his trial counsel failed to introduce evidence essential to his defense and counsel's health impacted his ability to provide effective representation. For the reasons in this opinion, we affirm Frazier's convictions.

## I. BACKGROUND

Frazier and Kelly Stolt began dating in November 2020. While they were together, Frazier moved into Stolt's home and lived there on and off with Stolt and her six children. Stolt and her oldest son jointly leased the home. In January 2022, Stolt learned that Frazier cheated on her. She ended their relationship, but the two still continued communicating and seeing each other. Over the next few months, Stolt allowed Frazier to store some of his personal belongings there and use her shower while she was at work, despite their breakup. However, in March 2022, Frazier packed up most of his personal belongings and moved out of Stolt's home to pursue a new job opportunity.

In April 2022, Stolt began dating Demetrius Siggers and on May 1, 2022, Siggers spent the night at Stolt's house. Unbeknownst to Stolt and Siggers, at about 6:00 a.m., Frazier arrived at Stolt's house and used a key to enter. Frazier, hearing sounds coming from Stolt's bedroom, grabbed a 2-foot long machete and went upstairs to her room. When Frazier entered Stolt's

bedroom, the pair began arguing. Siggers woke up and moved to stand beside Stolt as she continued arguing with Frazier, telling him to get out of her house. Stolt tried to push Frazier out of the room and shut the door when Frazier swung the machete, striking Siggers's arm and causing him to sustain a very large and serious laceration.

On May 20, 2022, Frazier texted Stolt stating that he "was going to [her] residence to get his things and would hurt everyone she loved." Frazier then drove to Stolt's home with his cousin, and entered the house without her permission. Stolt's son, Robert Stolt, was home at this time playing video games in the basement when he heard his younger sister shout to him that Frazier had entered their house. Robert ran upstairs with a loaded shotgun and Frazier left through the front door. Stolt learned of this incident while she was at work and called 911 because Frazier had been sending her several threatening text messages. Shortly thereafter, Frazier was charged and bound over for one count of first-degree home invasion, two counts of assault with a dangerous weapon (felonious assault), MCL 750.82, and one count of malicious destruction of property. The trial court later granted the prosecutor's motion to amend Frazier's felonious assault charges to one count of AWIGBH.

During pretrial proceedings, the prosecutor moved to introduce other-acts evidence under MRE 404(b). Specifically, the prosecutor sought to inform the jury about Frazier's May 20, 2022 visit to the home which resulted in Robert pulling a gun on Frazier. Over Frazier's objections, the trial court granted the prosecution's motion to admit this evidence at trial.

The main issue throughout trial was whether Frazier had permission to enter Stolt's home on the morning of the attack. Siggers, Stolt, and Robert, all testified that Frazier entered Stolt's home without permission and attacked Siggers. Stolt testified that although Frazier had previously lived with her at her house and she allowed him to store his personal belongings there after they had broken up, he had no reason to believe that he still had permission to live there.

The prosecutor questioned some witnesses about the May 20, 2022 altercation. Additionally, several witnesses were questioned about a photograph depicting shoes underneath Stolt's bed. Siggers and Stolt could not identify whose shoes were beneath the bed, although Stolt admitted the shoes could belong to Frazier. Robert also was not sure whose shoes were in the photographs because he claimed that several of his siblings stored their belongings in Stolt's room. However, he denied that Frazier's shoes were located under the bed because he claimed to have packed them away after Frazier moved out.

Frazier testified on his own behalf. He believed he had permission to enter Stolt's house on the morning of the incident because although he was not on the lease, all of his personal belongings were there, he never gave Stolt the key to her house, and Stolt never told him that they were no longer together. He identified shoes in a photograph of Stolt's bedroom as his own and denied they belonged to Stolt's children. Frazier admitted he sent Stolt "some nasty texts" because he was hurt, but denied threatening to kill Stolt or that he had a weapon on him when he entered Stolt's house. However, he later admitted that he sent a text to Stolt stating that he "should have killed" her and Siggers.

After the parties rested, presented their closing arguments, and approved the jury instructions, the trial court read the instructions to the jury. The trial court stated, in relevant part,

that evidence regarding the May 20, 2022 incident should only be considered to determine whether Frazier "specifically meant to break in and commit an assault," "acted purposefully, that is[,] not by accident or mistake," or that he used the same plan or scheme that he used in the initial incident. The jury found Frazier guilty of first-degree home invasion and AWIGBH. This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

Frazier contends that his home invasion and AWIGBH convictions should be overturned because they there was insufficient evidence to sustain them. We disagree.

## A. STANDARDS OF REVIEW

We review a sufficiency-of-the-evidence challenge de novo, meaning "we do not defer to any decision made by the trial court, but instead employ our independent judicial views while employing the well-settled standards for deciding sufficiency issues." *People v Harverson*, 291 Mich App 171, 176; 804 NW2d 757 (2010). In determining whether sufficient evidence was presented to support a conviction, we view the evidence in a light most favorable to the prosecution, with any conflicts in the evidence resolved in the prosecution's favor, to determine whether a rational trier of fact could find that the evidence proved the essential elements of the crime beyond a reasonable doubt. *People v Solloway*, 316 Mich App 174, 180-181; 891 NW2d 255 (2016). "The standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

## B. HOME INVASION

Frazier contends that his first-degree home invasion conviction was not supported by sufficient evidence. While we agree with Frazier that he and the prosecution presented two different stories as to whether he had permission to enter Stolt's house, we disagree that conflicting accounts amounts to insufficient evidence to convict.

The elements of first-degree home invasion are that the defendant (1) either breaks and enters a dwelling or enters a dwelling without permission; (2) either intends when entering to commit a felony, larceny, or assault in the dwelling or at any time while entering, present in, or exiting the dwelling commits a felony, larceny, or assault; and (3) is armed with a dangerous weapon or another person is lawfully present in the dwelling while the defendant is entering, present in, or exiting the dwelling. See MCL 750.110a(2); *People v Wilder*, 485 Mich 35, 43; 780 NW2d 265 (2010). At issue is whether Frazier had permission to enter Stolt's home on the day of the incident. The term "without permission" is defined by MCL 750.110a(1)(c) to mean "without having obtained permission to enter from the owner or lessee of the dwelling or from any other person lawfully in possession or control of the dwelling." "There is no breaking if the defendant has the right to enter the building." *People v Toole*, 227 Mich App 656, 659; 576 NW2d 441 (1998).

It is clear from the record that at one point, Frazier had a seemingly unconditional permission to enter Stolt's home. Before Stolt and Frazier broke up, they lived together in Stolt's home. The parties agree that Frazier was permitted to live there and had his own key.

However, Stolt claimed he never financially contributed to the household and Frazier acknowledged that he was never on the lease, so actual ownership was never alleged. Further, the record supports that permission to enter was revoked. Stolt testified that she and Frazier broke up in January 2022, but she allowed him to keep his personal belongings there and come by the house while she was at work. Both Robert and one of the responding officers stated that Stolt told them her relationship with Frazier was over. Even though Frazier was permitted to occasionally come to Stolt's house after the breakup, Stolt stated that Frazier had not been allowed to stay overnight at her house since January 2022. When Frazier left for his new job in March 2022, Stolt, believing that Frazier would be living and working in Kansas, took her house key back from him. Robert corroborated this, claiming that he saw Stolt take her key from Frazier. Stolt stated that on the day of the attack, she never invited Frazier over to get his belongings, and Frazier never told her that he was coming to the house. Frazier also admitted that no one invited him over on the morning of the attack. In short, Frazier asks this Court to disregard the testimony by Stolt and her family members on the ground that their version of events is incredible, but this Court may not assess their credibility. *People v Mehall*, 454 Mich 1, 6; 557 NW2d 110 (1997); *People v Lemmon*, 456 Mich 625, 646-647; 576 NW2d 129 (1998). Viewing this evidence in the light most favorable to the prosecution, *Solloway*, 316 Mich App at 180-181, a rational trier of fact could have found Frazier guilty of first-degree home invasion because the evidence demonstrated that he did not have permission to enter Stolt's home.

## C. AWIGBH

Frazier argues there was insufficient evidence to sustain his AWIGBH conviction because the record does not reflect that he intended to seriously injure Siggers. We disagree.

The elements of AWIGBH are "(1) an attempt or threat with force or violence to do corporal harm to another (an assault), and (2) an intent to do great bodily harm less than murder," which is the "intent to do serious injury of an aggravated nature." *People v Stevens*, 306 Mich App 620, 628; 858 NW2d 98 (2014) (quotation marks and citation omitted). See also MCL 750.84(1)(a). AWIGBH is a specific intent crime. *Stevens*, 306 Mich App at 628. "Because of the difficulty in proving an actor's intent, only minimal circumstantial evidence is necessary to show that a defendant had the requisite intent." *Id*. at 629. "Intent to cause serious harm can be inferred from the defendant's actions, including the use of a dangerous weapon or the making of threats." *Id*. "Although actual injury to the victim is not an element of the crime . . . injuries suffered by the victim may also be indicative of a defendant's intent . . . ." *Id*. (quotation marks and citation omitted).

At trial, multiple witnesses, including Frazier, testified that Frazier used a 2-foot long machete to cut Siggers. Neither party really debates that a large machete, when swung at another person, is a dangerous weapon. See *People v Brown*, 406 Mich 215, 220-223; 277 NW2d 155 (1979) ("The character of a dangerous weapon attaches by adoption when the instrumentality is applied to use against another in furtherance of an assault."). As a result of the attack, Siggers lost

large amounts of blood and suffered a serious laceration, nearly cutting his bone and requiring 26 stiches. Moreover, Frazier admitted he swung the machete at a "half naked man" because he was afraid that he could be seriously injured. The jury could and did infer from this admission that Frazier intended to seriously injure Siggers. Viewing this evidence in the light most favorable to the prosecution, a rational trier of fact could have found that Frazier's actions and Siggers's injury demonstrated that Frazier intended to seriously injure Siggers and that he was not in imminent danger and/or lawfully in the home he entered.

## III. OTHER-ACTS EVIDENCE

Frazier argues that the trial court erred by admitting other-acts evidence regarding his actions after the incident because it was not admitted for a permissible purpose and its probative value was outweighed by its prejudicial effect. We disagree.

## A. STANDARDS OF REVIEW

"The admissibility of other acts evidence is within the trial court's discretion and will be reversed on appeal only when there has been a clear abuse of discretion." *People v Kelly*, 317 Mich App 637, 643; 895 NW2d 230 (2016) (quotation marks and citation omitted). "An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes." *People v Baskerville*, 333 Mich App 276, 287; 963 NW2d 620 (2020). Consistent with this deferential posture, "a decision on a close evidentiary question ordinarily cannot be an abuse of discretion." *People v Thorpe*, 504 Mich 230, 251-252; 934 NW2d 693 (2019).

## B. DISCUSSION

MRE 404 governs other-acts evidence. MRE 404(b) generally prohibits evidence of other crimes, wrongs, or acts to prove that the defendant has a propensity to commit such acts. *People v Denson*, 500 Mich 385, 397; 902 NW2d 306 (2017). Evidence of other acts may, however, be admissible for other purposes. At the time the trial court decided this evidentiary issue, MRE 404(b)(1) provided:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.[1]

---

[1] The Michigan Rules of Evidence were amended effective January 1, 2024 and the substance of what was previously MRE 404(b)(1) is now found in MRE 404(b)(1) and (2). Our citation of all Rules of Evidence in this opinion refer to the version in effect at the time of Frazier's trial.

"This rule reflects the fear that a jury will convict a defendant on the basis of his or her allegedly bad character rather than because he or she is guilty beyond a reasonable doubt of the crimes charged." *Denson*, 500 Mich at 397.

In *People v VanderVliet*, 444 Mich 52, 55; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994), our Supreme Court explained the test courts should apply when determining whether to admit other-acts evidence:

> First, that the evidence be offered for a proper purpose under Rule 404(b); second, that it be relevant under Rule 402 as enforced through Rule 104(b); third, that the probative value of the evidence is not substantially outweighed by unfair prejudice; fourth, that the trial court may, upon request, provide a limiting instruction to the jury.

The first prong of the *VanderVliet* test asks "whether the prosecution has articulated a proper noncharacter purpose for admission of the other-acts evidence." *Denson*, 500 Mich at 398; accord *VanderVliet*, 444 Mich at 55. "The prosecution bears the burden of establishing that purpose." *Denson*, 500 Mich at 398.

"General similarity between the charged and uncharged acts does not, . . . by itself, establish a plan, scheme, or system used to commit the acts." *People v Sabin*, 463 Mich 43, 64; 614 NW2d 888 (2000). "There must be *such a concurrence of common features* that the charged acts and the other acts are logically seen as part of a general plan, scheme, or design." *People v Steele*, 283 Mich App 472, 479; 769 NW2d 256 (2009). "A high degree of similarity is required— more than is needed to prove intent, but less than is required to prove identity—but the plan itself need not be unusual or distinctive." *People v Galloway*, 335 Mich App 629, 644-645; 967 NW2d 908 (2020) (quotation marks and citation omitted).

In his motion to admit other-acts evidence, the prosecutor claimed that the evidence of Frazier reentering Stolt's house after the incident and making threats toward her was relevant and material to show that Frazier's actions were part of a larger pattern and there was no mistake or misunderstanding about their relationship status and his permission, or lack thereof, to enter Stolt's home. At trial, Stolt, Siggers, and Robert claimed that they did not give Frazier permission to enter Stolt's house on the morning of the May 1, 2022 altercation. Frazier admitted as much, stating that he did not ask Stolt if he could come over to her house and she did not invite him over. Similarly, during the May 20, 2022 incident, Frazier entered Stolt's home, without her permission or giving her advanced notice, to retrieve his belongings. He also told Stolt in text messages that he would come back for his stuff, kill everyone that she loved, claimed that he should have killed both Stolt and Siggers, and would come to Stolt's job. The evidence of Frazier's post-incident conduct strongly suggests that Frazier did not mistakenly enter Stolt's home or attack Siggers and that he had a pattern of entering her home without notice or gaining permission beforehand. Thus, the evidence was admitted for a proper purpose.

The second prong of the *VanderVliet* test requires that the other-acts evidence is relevant to a fact at issue. *Denson*, 500 Mich at 399. "Other-acts evidence is logically relevant if two components are present: materiality and probative value." *Id*. at 401. "Materiality is the requirement that the other-acts evidence be related to any fact that is of consequence to the action."

*Id*. (quotation marks and citation omitted). In other words, the fact to be proven must truly be at issue. *Id*. "Evidence is probative if it tends 'to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.' " *Id*. at 402, quoting MRE 401. In general, "[t]he threshold is minimal: any tendency is sufficient probative force." *Denson*, 500 Mich at 402 (quotation marks and citation omitted). MRE 404(b), however, "stands as a sentinel at the gate: the proffered evidence truly must be probative of something other than the defendant's propensity to commit the crime." *Id*. (quotation marks and citation omitted). "Thus, although the prosecution might claim a permissible purpose for the evidence under MRE 404(b), the prosecution must also *explain how* the evidence is relevant to that purpose without relying on a propensity inference." *Id*.

At trial, the main contested issue was whether Frazier was permitted to enter Stolt's home on the morning of the May 1, 2022 attack. The proffered evidence concerning the May 20, 2022 incident was relevant to proving that Frazier was at Stolt's home not by mistake, but as part of a common scheme or plan to enter her house without permission. In other words, by returning to Stolt's home on May 20, 2022, without her permission, Frazier demonstrated that he was willing to enter Stolt's home uninvited. Thus, this evidence made it more likely that he entered Stolt's home on May 1, 2022 knowing he did not have permission to do so, contrary to his claims. Additionally, the evidence concerning Frazier's threats that he should have killed Stolt and Siggers made it more probable that Frazier intended to assault and seriously injure Siggers during the attack. See *Denson*, 500 Mich at 402. Thus, this evidence was relevant to resolve facts as issue during trial.

The third prong of the *VanderVliet* test requires that the probative value of the other-acts evidence cannot be substantially outweighed by the danger of unfair prejudice. *Id*. at 398; *VanderVliet*, 444 Mich at 55. This prong requires satisfying MRE 403, which provided that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." All relevant evidence is prejudicial, so "the fear of prejudice does not generally render the evidence inadmissible." *People v Mills*, 450 Mich 61, 75; 537 NW2d 909 (1995). "It is only when the probative value is *substantially outweighed* by the danger of unfair prejudice that evidence is excluded." *Id*. (emphasis in original). "[P]rejudice denotes a situation in which there exists a danger that marginally probative evidence will be given undue or pre-emptive weight by the jury." *Id*. (quotation marks and citation omitted).

Here, the danger of unfair prejudice did not substantially outweigh the probative value of the evidence of the May 20, 2022 incident. As discussed, the evidence relating to that incident was probative of Frazier's common plan or scheme, the fact that his entry without permission was not a mistake, and that he intended to seriously injure Siggers. Any evidence of this nature will have some prejudicial effect on the accused, but here, even if there was any danger of unfair prejudice, this danger was alleviated by its proper purpose and the trial court's limiting instruction. See *People v Magyar*, 250 Mich App 408, 416; 648 NW2d 215 (2002) ("[A] limiting instruction such as this one that cautions the jury not to infer that a defendant had a bad character and acted in accordance with that character can protect the defendant's right to a fair trial."); see also *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011) ("Jurors are presumed to follow their instructions, and it is presumed that instructions cure most errors."). Accordingly, the trial court

did not abuse its discretion by admitting evidence of the May 20, 2022 incident. See *Denson*, 500 Mich at 396.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Frazier asserts that he was denied the effective assistance of counsel because his trial counsel failed to call witnesses and admit evidence that would have proved he lived in Stolt's home, and counsel's health and behavior affected his representation. We disagree.

## A. STANDARDS OF REVIEW

Claims of ineffective assistance of counsel present mixed questions of fact and law, with factual findings reviewed for clear error and questions of law reviewed de novo. *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018). Frazier failed to move for a new trial or an evidentiary hearing, so our "review is limited to errors apparent on the record." *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004).

## B. DISCUSSION

The United States and Michigan Constitutions protect a defendant's right to a fair trial. US Const, Am VI; Const 1963, art 1, § 17. "This right includes the right to the effective assistance of counsel." *People v Isrow*, 339 Mich App 522, 531; 984 NW2d 528 (2021). To prevail on an ineffective assistance claim, "a defendant bears a heavy burden to establish that (1) counsel's performance was deficient, meaning that it fell below an objective standard of reasonableness, and (2) but for counsel's error, there is a reasonable probability that the outcome of the defendant's trial would have been different." *Solloway*, 316 Mich App at 178.

Frazier argues that his trial counsel was ineffective because counsel failed to call witnesses who would have testified that Frazier lived at Stolt's house at the time of the incident and introduce his shoes into evidence. In support of his argument, Frazier attached an affidavit to his brief on appeal, wherein he claims that despite providing counsel with names of witness that could have aided in his defense, counsel failed to contact, interview, and call the witnesses. He also asserted that before trial, he told trial counsel he had in his possession the shoes shown underneath the bed in photographs of Stolt's bedroom. Despite telling counsel he had these shoes, counsel failed to introduce his shoes into evidence to show that the shoes could not have belonged to Stolt's children. But, based on the record before us, it appears that appellate counsel neither filed a motion under MCR 7.208 to expand the record in the trial nor filed a motion to remand for a *Ginther*[2] hearing in this Court. Because "it is impermissible to expand the record on appeal," *People v Powell*, 235 Mich App 557, 561 n 4; 599 NW2d 499 (1999), and Frazier has not filed an appropriate motion to expand the record, we decline to consider Frazier's statements made in his affidavit.

---

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

Regardless, any testimony that Frazier lived at Stolt's home would have been duplicative of Frazier's own testimony that he lived at Stolt's house at the time of the incident. Stolt herself testified that at one point she and Frazier lived together. Frazier also told the jury that the shoes beneath Stolt's bed belonged to him. Stolt also testified that she allowed Frazier to store some of his belongings in her house after the breakup, and that when he moved out for his new job, he left some personal belongings including "bags of broken down shoes." Thus, even if counsel's performance was unreasonable, Frazier was not prejudiced by counsel's performance because he was given the opportunity to present such evidence to the jury, and Stolt admitted that some of his belongings were still in her house.

Frazier also claims that during trial, his counsel was suffering from "physical ailments" due to alcohol consumption that impeded trial counsel's ability to prepare for trial and effectively represent Frazier. Again, Frazier cannot expand the record on appeal. As it stands, there is no record evidence indicating that counsel had any such problem. Because Frazier has failed to establish the factual basis for his claim, *White*, 331 Mich App at 148, Frazier is not entitled to relief on appeal.

Affirmed.

/s/ Allie Greenleaf Maldonado
/s/ Thomas C. Cameron
/s/ Adrienne N. Young